The **NATIONAL FOUNDATION**,
Appellant,

v.

**CITY OF FORT WORTH**, Appellee.

No. 25739.

United States Court of Appeals
Fifth Circuit.

Aug. 5, 1969.

William M. Brown, Fort Worth, Tex., Stephen V. Ryan, New York City, Brown, Herman, Scott, Young & Dean, J. Shelby Sharpe, Fort Worth, Tex., for appellant.

S. G. Johndroe, Jr., City Atty., Jerome H. Parker, Jr., Asst. City Atty., Fort Worth, Tex., for appellee.

Before JONES and COLEMAN, Circuit Judges, and CHOATE, District Judge.

JONES, Circuit Judge:

The appellant, National Foundation, brings this appeal from a summary judgment entered by the district court in favor of the appellee, City of Fort Worth, upholding the constitutional validity of Chapter 32 of the Code of the City of Fort Worth, Texas, which regulates the solicitations of charitable contributions

on the streets and in public places in Fort Worth.

The National Foundation is a New York chartered, non-profit, charitable corporation, and has a permit to do business in Texas. Forth Worth is a home rule city. Foundation was formerly known as the National Foundation for Infantile Paralysis, Inc., but since the successful campaign against polio, it has broadened the scope of its activities to include all human diseases. Its fund raising activities include the annual "March of Dimes." On the local level contributions are solicited by "Chapters," which are assigned geographical territories responsible for the Foundation's activities in that territory. This action arose out of events in 1966 and 1967, when the Tarrant County Chapter of Foundation, which includes Forth Worth, was refused a permit to solicit for its annual "March of Dimes" in Fort Worth. The Tarrant County Chapter of the Foundation was organized in 1940. Chapter 32 of the City Code was enacted in 1937 and has been in force since then.

Chapter 32 requires that a permit be obtained in order to solicit funds "on the streets, in any office building or other public or private place, by house to house canvass or by telephone within the city" upon the representation that such funds are to be used for a charitable, educational, religious, patriotic or philanthropic purpose.[1] The ordinance exempts those organizations which solicit solely from its own members for its own use. It contains provisions setting out the conditions under which a permit will not be granted.[2]

1. Sec. 32–3, Forth Worth City Code (1964) reads as follows:

"Sec. 32–3. Permit—Required.

"It shall be unlawful for any person, organization, society, association or corporation, or for any agent, member or representative thereof, to solicit property or financial assistance of any kind, to sell or offer to sell any article, tag, service, emblem, publication, ticket, advertisement, subscription, or any thing of value on the plea or representation that such sale or solicitation, or the proceeds therefrom, are for a charitable, educational, religious, patriotic or philanthropic purpose, on the streets, in any office building or any other public or private place, by house to house canvass, or by telephone in the city unless such person, organization, society, association or corporation shall have first obtained a permit in compliance with the terms of this chapter; provided, however, that the provisions hereof shall not apply to:

"(a) Any church congregation, religious society, sect, group or order which solicits funds for its own use solely from its own members or from its own congregation; and

"(b) Any fraternal, social, patriotic, cultural or educational organization which solicits funds solely from its own members or from its own assemblies. (Ord.No. 4753, § 1., Ord.No. 4768, § 1.)"

2. "Sec. 32–5. Same—Investigation; conditions of approval; certification to city secretary.

"Upon receipt of an application as provided in section 32–4, the charitable solicitations commission shall make or cause to be made such investigation as shall by the commission be deemed necessary in regard thereto. As a result of its investigation and action the commission may certify to the city secretary its approval to issue a permit, provided all other provisions of this chapter are complied with and unless one or more of the following facts is found to exist:

"(a) That one or more of the statements in the application is not true;

"(b) That the applicant is not a responsible person of good character and reputation for honesty and integrity, or if the applicant is not an individual person, that any officer or agent of the applicant is not a responsible person of good character and reputation for honesty and integrity;

"(c) That the control and supervision of solicitations on behalf of the applicant will not be under responsible and reliable persons;

"(d) That the applicant is or has engaged in a fraudulent transaction or enterprise;

"(e) That a solicitation on behalf of the applicant would be a fraud upon the public;

"(f) That the cost of solicitation for a charitable purpose in the city during any of the three years immediately preceding the date of application has been excessive in relation to the gross amount raised.

The Charitable Solicitation Commission, a municipal administrative agency created by Chapter 32, refused to approve a permit for the Foundation's 1967 campaign because the expected costs of solicitation "exceed the twenty percent limit allowed by the City ordinance." The ordinance establishes that the permissible cost of solicitation is twenty percent of the amount collected, "unless special facts or circumstances are presented showing that a cost higher than twenty per cent is not unreasonable." Fort Worth City Code, Sec. 32–5(g).

The denial of a permit by the City's Charitable Solicitation Commission was the culmination of a series of events which began on January 13, 1965. On that date, the Commission notified the Foundation that the Foundation's cost of solicitation exceeded appreciably the prescribed limitation of twenty percent of the amount collected and warned the Foundation that it would deny future permits if the situation persisted. On October 19, 1966, Foundation filed its application for a permit to conduct its March of Dimes campaign in the City between December 15, 1966 and March 15, 1967. The application was considered by the Commission at its meeting of November 22, 1966. At this meeting the Commission found that Foundation's cost of solicitation during the preceding year exceeded the twenty percent limitation. The issuance of a permit was withheld, but the Foundation was granted the opportunity to present factual information which would show that the fund raising expenses would not exceed twenty percent for the 1967 campaign. The Commission considered Foundation's application for a second time on December 13, 1966. It again determined that the cost of solicitation exceeded the permissible limit of twenty percent and denied a permit.

Pursuant to the provisions of the ordinance, the Foundation appealed to the City Council of Fort Worth from the determination of the Commission. The City Council heard the matter de novo and upheld the Commission. A restraining order was subsequently issued by the District Court of Tarrant County, Texas, ordering the City not to enforce the penal provisions of Chapter 32. This order was dissolved by the Supreme Court of Texas. City of Fort Worth v. Craik, Tex. 1967, 411 S.W.2d 541. Thereafter, Foundation filed its complaint in the district court. The main contentions of the Foundation are:

(1) The right to publicly disseminate information about a charitable organization and to publicly solicit funds is a right of free speech and press protected against prior restraint by municipal censorship;

(2) Assuming the right to conduct a charitable solicitation is a protected right, Chapter 32 fails to prescribe definite standards by which solicitation permits are to be granted;

(3) It was deprived of liberty without due process when it was prevented from conducting its March of Dimes;

(4) The exemptions in Section 3 of Chapter 32 are discriminatory and deny it equal protection of the laws;

(5) Seeking a permit in prior years did not estop it from now bringing these claims; and

(6) It was denied a right, privilege, or immunity within the scope of 42 U.S.C.A. Sec. 1983.

The Foundation asserts jurisdiction under the Civil Rights Act, 42 U.S.C.A. Sec. 1983, and under 28 U.S.C.A. Sec.

"(g) That the expected cost of solicitation will be excessive in relation to the expected gross amount to be raised. Any such cost in excess of twenty per cent of the amount collected shall be deemed to be unreasonable unless special facts or circumstances are presented showing that a cost higher than twenty per cent is not unreasonable.

"(h) That such solicitation will be incompatible with the protection of the health, life, property, safety, welfare or morals of the citizens of the city. (Ord.No. 4753, § 6; Ord.No. 4768, § 4.)"

1343(3) and under Title 28 U.S.C.A. Sec. 2201. It contends that it has a right to solicit funds in public, but it concedes that the manner of solicitation may be regulated by a municipality. The district court assumed jurisdiction on the "slender threat" created by the allegation that the exemption in Chapter 32 for organizations soliciting "funds for its own use solely from its own members" was a discriminatory classification which denies the Foundation equal protection of the laws. We consider not only this question but the other issues presented by the Foundation on this appeal.

The City has filed with this Court a motion to dismiss this appeal because of mootness. The motion has been carried with the case. City contends that the case is now moot because Chapter 32 has been substantially amended and because the time period for which the permit was sought has passed. The amendment makes the issuance of permits mandatory if the standards and qualifications are met, provides for due notice and right of cross-examination, limits enforcement to public streets and places, and clarifies the sections pertaining to the permissible cost of solicitation. The City contends that these revisions were made in light of this Court's decision in Hornsby v. Allen, 5th Cir. 1965, 326 F.2d 605, reh. denied, 330 F.2d 55. As authority for its request it cites Moran v. Carswell, 5th Cir. 1967, 384 F.2d 720. The Foundation attacks the motion on the basis that since Chapter 32 was not revoked in toto many issues raised in the trial court still remain; and that there is no guarantee that the objectionable provisions will not be re-adopted.

■ We agree with the Foundation that this case has not been rendered moot by the amendments to Chapter 32. What the City Council has enacted can be repealed, and what has been amended can be reenacted. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303. We are also guided to this conclusion by United States v. Atkins, 5th Cir. 1963, 323 F.2d 733, 739; and Anderson v. City of Albany, 5th Cir.

1963, 321 F.2d 649, 657. There still remain material questions for determination by the Court. Although the permissible percentage limitation on cost of solicitation has been changed from twenty to twenty-five percent, the Foundation's cost of solicitation was in excess of this new limitation. This change is not such as terminates the cause and divests the Court of jurisdiction. The issue posed is real and substantial and not merely academic or speculative as in Troy State University v. Dickey, 5th Cir. 1968, 402 F.2d 515, 516, and Fair v. Dekle, 5th Cir. 1966, 367 F.2d 377.

The revised Chapter 32 still contains the provisions exempting religious and fraternal societies which solicit from their own members solely for their own use. The Foundation continues to attack the constitutionality of these exemptions. Since the ordinance in controversy regulates the public solicitation of funds, a question of general public interest is presented. The issues involve not only the health, welfare and safety of the people solicited but they also affect those people on whose behalf the solicitations are made. See, Eye Dog Foundation v. State Board of Guide Dogs, 1967, 67 Cal.2d 536, 63 Cal.Rptr. 21, 432 P.2d 717. The appeal should be decided on its merits.

■■ The Foundation does not contend, nor could it, that it has an absolute right publicly to solicit funds for charity without state regulation. No constitutional right exists to make a public solicitation of funds for charity. The reasonable regulation of charitable organizations is within a government's police power. Cantwell v. State of Connecticut, 310 U.S. 296, 304, 60 S.Ct. 900, 84 L.Ed. 1213; American Cancer Society v. City of Dayton, 1953, 160 Ohio St. 114, 114 N. E.2d 219; Gospel Army v. City of Los Angeles, 1945, 27 Cal.2d 232, 163 P.2d 704; Eye Dog Foundation v. State Board of Guide Dogs, supra 63 Cal.Rptr. at 30, 432 P.2d at 726; City of Seattle v. Rogers, 1940, 6 Wash.2d 31, 106 P.2d 598, 130 A.L.R. 1498; Ex parte Williams, 1940, 345 Mo. 1121, 139 S.W.2d 485, cert. denied Williams v. Golden, 311 U.S. 675, 61

S.Ct. 42, 85 L.Ed. 434; Ex parte White, 1935, 56 Okl.Cr. 418, 41 P.2d 488; Ex parte Dart, 172 Cal. 47, 155 P. 63, L.R.A. 1916D, 905, Ann.Cas. 1917D, 1127. In Cantwell, supra, the Supreme Court stated that:

> "Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. The state is likewise free to regulate the time and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience." 310 U.S. at 306–307, 60 S.Ct. at 904.

Since the solicitation of funds for charity may be the subject of state regulation, we now inquire whether the ordinance adopted by the City to regulate public solicitation on the streets of Fort Worth was a reasonable exercise of its police power. The Foundation was denied a permit to solicit funds in Fort Worth because the cost of such solicitation was found to exceed the permissible limit of twenty percent of the amount to be raised. Sections 32–5, (f) and (g) read:

> "(f) That the cost of solicitation for a charitable purpose in the city during any of the three years immediately preceding the date of application has been excessive in relation to the gross amount raised.
> "(g) That the expected cost of solicitation will be excessive in relation to the expected gross amount to be raised. Any such cost in excess of twenty percent of the amount collected shall be deemed to be unreasonable unless special facts or circumstances are presented showing that a cost higher than twenty per cent is not unreasonable."

■ As an incident to the right of a city to regulate the use of its streets by solicitors and as an element of the protection a city may afford its citizens, a city may reasonably require of one who wishes to solicit that he furnish it with a statement of the past and expected receipts and costs of collection of the funds solicited within its limits and to deny permission to solicit if the cost of collection is excessive.

A fixed percentage limitation on the costs of solicitation might be undesirable and inapplicable if applied to all types of charitable organizations. What may be proper in one situation may not be so in other situations. The ordinance before us does not imply a fixed standard but permits a determination of the reasonableness of the ratio between the cost of solicitation and the amount collected. The import of the ordinance is that if the costs of collection do not exceed twenty percent of the amount collected no further inquiry need be made into collection costs and the amount collected. However, if the ratio of cost of collection to the amount collected does exceed twenty percent, the organization seeking the permit may show that such excess is not unreasonable. Although given the opportunity, the Foundation made no such showing.

■ The City has consistently applied this limitation since 1937. The Foundation has solicited funds in the City under this limitation since approximately 1940. Upon the Foundation rested the burden of establishing that the ordinance did not rest on any reasonable basis. Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130. It did not meet this burden and we cannot say that the limitation provisions of the ordinance are unreasonable, especially in light of the strong presumption of constitutionality afforded an ordinance. Goldblatt v. Town of Hempstead, supra; Mestre v. City of Atlanta, 5th Cir. 1958, 255 F.2d 401; Standard Oil Co. v. City of Tallahassee, 5th Cir. 1950, 183 F.2d 410, cert. denied 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647; City of Anchorage v. Richardson Vista Corp., 9th Cir. 1957, 242 F.2d 276; City of Seattle v. Rogers, supra; American Cancer Society v. City of Dayton, supra at 223 of 114 N.E.2d. The standards fixed by the ordinance are

a valid and constitutional means of achieving the City's purpose of protecting its citizens.

■ The Foundation attacks subdivisions (f) and (g) of Chapter 32–5 of the City Code as being arbitrary and discriminatory and lacking in definite and certain standards. Specifically, it attacks the use of the words "excessive" in subdivision (f) and "expected cost" in subdivision (g). Here again, we must examine these subdivisions in light of the presumption of validity and reasonableness accorded a municipal ordinance passed within appropriate legislative powers. When read together, these two subdivisions clearly point out that the plain intent of the City Council in enacting the subdivisions was to provide that if solicitation costs exceed twenty percent of the gross amount raised they would be deemed excessive unless shown to be reasonable. The Foundation's argument that the use of the words "expected cost" calls for "highly speculative determinations" solely within the province of the City is without merit.

■ We see no need to discuss the Foundation's attack on the other subdivisions of Section 32–5. "The judicial power does not extend to the determination of abstract questions." Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688; Muskrat v. United States, 219 U.S. 346, 361–362, 31 S.Ct. 250, 55 L.Ed. 246. Even if we were to assume that one or more subdivisions of Section 32–5 were unconstitutionally vague or arbitrary, the severability clause of the City Code,[3] would save subdivisions (f) and (g). Deletion of all other subdivisions of Section 32–5 except subdivisions (f) and (g)

would not destroy the effectiveness of these provisions. We agree with the district court that subdivisions (f) and (g), standing alone, can be given legal effect. Severability clauses such as the one considered here have met with consistent judicial approval. Champlin Refining Co. v. Commission, 286 U.S. 210, 235, 52 S.Ct. 559, 76 L.Ed. 1062; City of Kermit v. Spruill, Tex.Civ.App.1959, 328 S.W.2d 219.

■ Section 3 of Chapter 32 of the City Code exempts:

"(a) Any church congregation, religious society, sect, group or order which solicits funds for its own use solely from its own members or from its own congregation; and

"(b) Any fraternal, social, patriotic, cultural or educational organization which solicits funds solely from its own members or from its own assemblies."

from the requirements of the Chapter. The Foundation urges that these quoted provisions operate so as to deny it the equal protection of the laws. In support of its judgment, the district court correctly and adequately disposed of this argument in its opinion where it is said:

"The only issue remaining is the plaintiff's contention that the classification of the organizations in Section 3 of Chapter 32, which are exempted from the requirements of the ordinance, is so discriminatory, arbitrary, and unreasonable that it denies the plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment. The burden of proof is on the plaintiff to show that the classification is arbitrary and unreasonable. Goldblatt v. Town of Hempstead, 369

3. Section 1–4 of Chapter 1 of the Fort Worth City Code provides:

"It is hereby declared to be the intention of the city council that the sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of this Code, since the same would have been enacted by the city council without the incorporation in this Code of any such unconstitutional phrase, clause, sentence, paragraph or section."

U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 79, 31 S.Ct. 337, 55 L.Ed. 369, 377 (1911); Evanston Cab Co. v. City of Chicago, 7 Cir., 325 F.2d 907 (1963), cert. den. 377 U.S. 943 [84 S.Ct. 1349, 12 L.Ed.2d 306]; Sinclair Refining Co. v. City of Chicago, 7 Cir., 178 F.2d 214 (1950).

" 'The rules by which this contention must be tested, as is shown by repeated decisions of this court, are there: 1. The equal protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts can reasonably be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' Lindsley v. Natural Carbonic Gas Co., supra, 220 U.S. at pp. 78–79 [31 S.Ct. 337]. See also: Independent Dairymen's Ass'n. v. City and County of Denver, 10 Cir., 142 F. 2d 940 (1944); Ex Parte Rubin, Tex. Cr.App., 362 S.W.2d 331, 334 (1962).

"The Court is of the opinion that there is nothing unreasonable or arbitrary in exempting from the permit requirements of Chapter 32 churches and other organizations who solicit only from their memberships. The consideration in such solicitations are different from solicitations from the general public on public streets and in house to house canvassers. The classification does not therefore deny the plaintiff the equal protection of the laws guaranteed to it by the Fourteenth Amendment."

We would only add to the correct conclusions of the district judge by noting that the exemptions set out in Section 32–3 of the City Code are in no way similar to those found unconstitutional in either City of Seattle v. Rogers, supra, or Adams v. City of Park Ridge, 7th Cir. 1961, 293 F.2d 585.

We do not reach the question of whether the Foundation is estopped to challenge the denial of its application for a permit because of its conduct in complying with the ordinance in previous years. Other considerations hereinbefore discussed require the affirmance of the judgment of the district court without regard to the question of estoppel.

In conclusion we comment upon the Foundation's contentions that it was entitled to redress under 42 U.S.C.A. Sec. 1983, as well as under the Judicial Code provisions of 28 U.S.C.A. Sec. 1343(3). The substantive rights claimed by the Foundation were considered in the district court and have been considered by this Court. We see no useful purpose to be served by cataloguing or pigeonholing the claims with respect to the statutory provisions under which relief was sought.

Finding no error in the order of the district judge granting the City of Fort Worth's motion for summary judgment, the judgment of the district court is affirmed.