JOSEPH BROTHERS CO., APPELLANT, *v.*
BROWN, ATTY. GEN., ET AL., APPELLEES.

[Cite as Joseph Brothers Co. v. Brown (1979),
65 Ohio App. 2d 43.]

(No. L-78-028—Decided March 30, 1979.)

*Messrs. Openlander & Connelly, Mr. William M. Connelly* and *Mr. James D. Caruso,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr. Richard C. Farrin, pro se.*
*Mr. Anthony G. Pizza,* prosecuting attorney, *pro se.*
*Mr. Robert Dorrell,* for appellee city of Oregon.

CONNORS, J. This appeal by plaintiff-appellant, Joseph Brothers Company, is from a decision of the Court of Common Pleas of Lucas County denying appellant's prayer for a permanent injunction enjoining the enforcement of R. C. Chapter 2915, as amended in December 1976, and from the holding that R. C. Chapter 2915 is lawful under the constitutions of the United States and the state of Ohio.

This case involves a relationship between appellant and several charitable organizations which are licensed under R. C. Chapter 2915 to conduct bingo. In September 1975, appellant was approached by representatives of four Catholic organizations who needed a facility in which to conduct bingo games in order to make money for operating expenses. Appellant agreed to construct a building specially equipped for conducting bingo games. Financing was arranged with a bank allegedly pursuant to a lease agreement between appellant, as a noncharitable lessor, and the charitable organizations, as lessees.

This lease agreement provided that the four organizations would have the exclusive use of the facility for ten years at a monthly rental computed on the basis of the facility being used six nights per week at $500 per night.

Construction was completed on June 1, 1976; thereafter, the Catholic organizations took possession and began conducting charitable bingo games six nights per week.

The Ohio Charitable Bingo Act was enacted in May 1976 pursuant to a grant of authority in Section 6, Article XV of the Ohio Constitution. The bingo Act was amended effective

December 6, 1976, and R. C. 2915.09(A)(3) was amended (136 Ohio Laws 3947-48) to read as follows:

"(A) A charitable organization that conducts a bingo game shall:

"* * *

"(3) Conduct the bingo game on premises owned by the charitable organization, premises owned by another charitable organization and leased from that charitable organization for a rental rate not in excess of two hundred fifty dollars per bingo session, *or premises leased from a person other than a charitable organization for a rental rate that is not more than is customary and reasonable for premises that are similar in location, size, and quality, but not in excess of two hundred fifty dollars per bingo session.* If the charitable organization leases from a person other than a charitable organization the premises on which it conducts bingo games, the lessor of the premises shall provide only the premises to the organization and shall not provide the organization with bingo game operators, security personnel, concessions or concession operators, bingo equipment, or any other type of service or equipment. *A person who is not a charitable organization shall not lease premises that he owns, leases, or otherwise is empowered to lease to more than two charitable organizations per calendar week for conducting bingo games on the premises.*" (Emphasis added.)

Through the enactment of these amendments, the Ohio General Assembly sought to curb abuses in the bingo area primarily in those operations conducted on premises leased from noncharitable lessors and to assure that charitable organizations, rather than private individuals or businesses, would be the primary beneficiaries of charitable bingo.

The appellant was thereafter limited as to the number of charitable organizations leasing the premises each week and the amount of rent charged. Both of these provisions restricted terms which existed in the lease agreement at the time the new legislation became effective. Appellant in this action sought to enjoin the enforcement of amended R. C. 2915.09(A)(3) and asked the court to declare said provisions unconstitutional as a taking of private property without compensation in violation of Sections 1, 16 and 19 of Article I of

the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

The first assignment of error is as follows:

"I. The trial court erred in holding that plaintiff-appellant did *not* possess the necessary property right to maintain an action for injunctive or declaratory relief."

Before one can argue the unconstitutionality of a provision of law, he must come within its purview and have an interest which is affected or prejudiced by enforcement of the law. *Anderson* v. *Brown* (1968), 13 Ohio St. 2d 53. Appellant herein alleges that the operation of amended R. C. 2915.09(A)(3) directly interferes with certain property rights which exist by virtue of a contract to lease between itself as a noncharitable lessor and a group of charitable organizations which are licensed to conduct bingo. Appellant claims that the amended statute as applied to a legal relationship existing prior to the Act interferes with a property interest in such a manner as to give it standing to challenge the statute.

The right to contract is specifically guaranteed by Section 1, Article I of the Ohio Constitution and is within the protection of the Fourteenth Amendment to the United States Constitution. It is a property right. *Cleveland* v. *Clements Bros. Construction Co.* (1902), 67 Ohio St. 197. Similarly, an interest in a contract has been held to be a property interest. *Akron* v. *Pub. Util. Comm.* (1933), 126 Ohio St. 333.

Although there was no written lease and the existence of an oral lease is in dispute, a review of the record establishes the probable existence of an oral lease between appellant as a noncharitable lessor and four charitable organizations as lessees, entered into in September 1975, under which the four charitable organizations would operate six bingo sessions per week at a rent of $500 per session. Amended R. C. 2915.09 (A)(3) limits noncharitable lessors to leasing to two charitable organizations per calendar week, not to exceed two sessions each at a rental rate not to exceed $250 per session. There is no question that enforcement of these provisions interferes substantially with appellant's rights under the contract.

Under ordinary circumstances, this infringement of contract rights would give the aggrieved party standing to challenge the offending statute. This situation is complicated, however, by the fact that R. C. Chapter 2915 was adopted as a

licensing statute to control and regulate the privilege of conducting bingo by charitable organizations. These organizations are required to obtain a license and must comply with the conditions and restrictions imposed by the Act. What is the relationship of a licensee and someone who deals with the licensee? The appellees would have us believe that this affects the property interest of a noncharitable lessor's right to contract, *i.e.*, that a noncharitable lessor has no property interest in its contracts with a charitable lessee.

It is true that a license does not constitute property in a constitutional sense. *State, ex rel. Zugravu*, v. *O'Brien* (1935), 130 Ohio St. 23; *Salem* v. *Liquor Control Comm.* (1973), 34 Ohio St. 2d 244. But this is not a case where the state is attempting to regulate appellant's property through a license. The fact that the charitable organization is required to be licensed does not, in our opinion, extinguish all property interests contained in a contract between appellant and a bingo licensee. The first assignment of error concerns whether or not appellant had a property interest sufficient to give it standing to attack the statute; it is another question as to the extent the state can impair valid and existing contract obligations through its police power. We find such a property interest does exist and appellant's first assignment of error is well taken.

The second assignment of error is stated as follows:

"II. The lower court erred in holding that the provisions of Chapter 2915 of the Ohio Revised Code were valid under the contitutions of the United States and Ohio."

Having found that the appellant has a property interest in the alleged leases between appellant as a noncharitable lessor and the charitable bingo licensee, we move to the appellant's other claims: first, that the maximum rental amount of $250 is a fixed standard which is arbitrary and unreasonable and in derogation of a noncharitable lessor's right to due process of law and equal protection; and second, that the amended provision which limits the number of charitable organizations to which a noncharitable lessor can lease his facility each week is an unreasonable and arbitrary exercise of the state's police power.

One who challenges the authority of the Legislature to enact legislation pursuant to the state police power has a

heavy burden indeed. The presumption of the validity of such legislation can be rebutted only by "***negativing every reasonable basis which might support the presumption that the enactment of the legislation included a determination by the legislative body that there was a reasonable need therefor***." *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 151.

The Supreme Court of Ohio has established the essential tests for determining the constitutionality of legislation which has been enacted pursuant to the police power. In order to be valid, legislation must (1) concern an area in which government has the right to exercise some degree of control, (2) be reasonable and nondiscriminatory and (3) bear a substantial relation to the purpose sought to be effectuated. *Dragelevich* v. *Youngstown* (1964), 176 Ohio St. 23; *Teegardin* v. *Foley* (1957), 166 Ohio St 449; *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376. For the reasons hereinafter announced, we find that the provisions of R. C. Chapter 2915 meet the tests of constitutionality and are a valid exercise of the state's police power.

It is undisputed that the state has the power to prohibit gambling in all forms. If gambling is to be allowed, the state has the power to regulate it by statute. *Solomon* v. *Cleveland* (1926), 26 Ohio App. 19. In addition to the inherent right of the government to regulate gambling within its police power, Section 6 of Article XV of the Ohio Constitution was amended, effective November 5, 1975, to specifically grant power to the General Assembly to "authorize and regulate the operation of bingo to be conducted by charitable organizations for charitable purposes." It is, therefore, clear that the Charitable Bingo Act and its amendments are legislation passed within appropriate legislative powers.

The requirement that legislation be reasonable and nondiscriminatory presents the most critical concern regarding the effect of R. C. Chapter 2915 on the appellant herein. Appellant challenges the language of R. C. 2915.09(A)(3) which limits the rent that a noncharitable lessor may charge to "not more than is customary and reasonable for premises that are similar in location, size, and quality, but not in excess of two hundred fifty dollars per bingo session.***" Appellant claims that the amended section imposes a fixed standard which is arbitrary because it does not allow for any showing of what is

"customary and reasonable," nor allow for differences in expenses among the members of the regulated group.

In support of this contention, appellant cites two cases: *National Foundation* v. *Fort Worth* (C.A. 5, 1969), 415 F. 2d 41, certiorari denied 396 U. S. 1040 (1970); and *Serrer* v. *Cigarette Service Co.* (1947), 148 Ohio St. 519. Both of these cases support the proposition that a fixed standard or a fixed percentage limitation may be arbitrary if it does not allow for differences in operating costs among the regulated group. These cases were decided upon facts which clearly indicated that the challenged legislation was or was not arbitrary, unreasonable or discriminatory in the means chosen to effectuate its purpose.

The record on appeal, however, does not indicate how the limitation on rent affects appellant in an unreasonable manner. Appellant presented no evidence concerning what may be a customary and reasonable rental rate for premises similar to its own, nor was there any showing of how its costs versus income has been affected. Since the burden on the issue of "reasonableness" is upon the appellant and it has failed to establish how the statute is unreasonable, the statute must stand as a valid police regulation. *Goldblatt* v. *Hempstead* (1962), 369 U. S. 590.

In addition, appellant alleges that because it had a contract to rent its facility for $500 per session, the newly imposed rent limitation amounts to a taking of property without due process of law. Both the United States Supreme Court and the Supreme Court of Ohio have repeatedly held that regulatory legislation which is a valid exercise of the police power does not constitute a taking of property, even though economic hardship may result. *Bowles* v. *Willingham* (1944), 321 U. S. 503; *Goldblatt* v. *Hempstead, supra; Comtronics, Inc.,* v. *Puerto Rico Tel. Co.* (Puerto Rico 1975), 409 F. Supp. 800, affirmed 553 F. 2d 701 (C.A. 1, 1977); *Wessell* v. *Timberlake* (1916), 95 Ohio St. 21; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127; *Ghaster Properties, Inc.,* v. *Preston* (1964), 176 Ohio St. 425. Appellant's right to due process of law was not violated.

Originally, appellant claimed that R. C. 2915.09(A)(3) violated its right of equal protection in that it discriminatorily limited noncharitable lessors to renting to only two charitable organizations per calendar week while not imposing the same

limitation upon charitable lessors. However, R. C. 2915.09 (A)(3) was further amended, effective December 15, 1977 (Am. Sub. H. B. No. 72, 112th Gen. Assembly), to prohibit charitable lessors from leasing to more than two charitable organizations per calendar week. The court finds that portion of appellant's equal protection challenge to be moot.

Further, appellant claims a denial of equal protection in that the statute discriminates against a noncharitable lessor who owns a larger facility. The case of *Porter* v. *Oberlin, supra* (1 Ohio St. 2d 143), at pages 150-51, stands for the principle that a class based on reasonable distinctions does not discriminate even though varying obligations are placed on different classes:

"Simply calling a group of persons selected for special legislative treatment a class does not satisfy the requirements of equal protection. However, the foregoing constitutional provisions do not prohibit all class legislation. They do require that such legislation must apply alike to all persons within a class, and reasonable grounds must exist for making a distinction between those within and those without a designated class. Within the limits of these restrictive rules, a legislative body has a wide measure of discretion.***

"Equal protection provisions of the federal and Ohio Constitutions do not require resort to close distinctions or the maintenance of a precise scientific uniformity and do not prohibit distinctions not shown to be substantial or which are based on differentiations not shown to be arbitrary or capricious.***

"Furthermore, it is generally recognized that a legislative body, when it chooses to act to correct a given evil, need not correct all the evil at once, but may proceed step by step.***"

We find that, consistent with the purpose of the Ohio Charitable Bingo Act to prohibit abuses by large noncharitable lessors, the $250 dollar rent limitation and the limitation on renting to more than two charitable organizations in one calendar week are reasonable classifications within constitutional limits and do not discriminate against the appellant herein.

The final constitutional requirement of the challenged limitation is that it must bear a substantial relationship to the purposes sought to be effectuated. As indicated, the purpose of the Ohio Charitable Bingo Act is to provide a source of in-

come to charitable organizations through the operation of bingo games and to eliminate the opportunity for large private gains by persons supplying the charitable organizations with premises, equipment and services. The challenged provisions of the statute do bear a substantial relationship to effectuate those purposes. The legislative determination prohibiting non-charitable lessors from leasing their premises more than four nights per week and limiting the rental rate to a maximum of $250 per session is accorded a presumption of validity and it is not within the power of the court to determine the wisdom of such particular provisions. *Teegardin* v. *Foley, supra; Porter* v. *Oberlin, supra.*

" 'Unless there is a clear and palpable abuse of power, a court will not substitute its judgment for legislative discretion.***' " *Porter* v. *Oberlin, supra,* at page 149.

This court, having found the challenged legislation to be a valid exercise of police power, finds further that R. C. 2915.09(A)(3) is not an unreasonable means of attaining a legitimate purpose and is in a substantial relationship with such purpose.

Appellant's second assignment of error is found not well taken.

Finding that substantial justice has been done the party complaining, the judgment of the Court of Common Pleas of Lucas County is affirmed.

*Judgment affirmed.*

POTTER, P. J., concurs.

BROWN, J., dissenting. The Legislature has recognized by enactment of R. C. Chapter 2915, which permits bingo operations in a limited and extensively regulated manner by charitable organizations holding state licenses, that bingo operations for certain purposes and places are not inherently evil. Bingo is not so inherently evil that the Legislature enacted legislation constituting a blanket prohibition of bingo operations.

In view of the state's recognizing, by permitting bingo operations, that bingo operations for certain purposes and times serve a common good, may the state validly, within the constitutional framework, limit a noncharitable lessor from

leasing his premises to a charitable organization licensed to conduct bingo operations by limiting it so that the operations cannot be conducted on each night of each week? Further, may the amount of rent agreed upon by the noncharitable lessor to the charitable organization be limited to a fixed amount per bingo session, such as $250?

R. C. 2915.09, containing limitations on the right of the lessor and charitable organization lessees to make their own contract provisions governing the number of bingo sessions each week and the maximum rental to be paid, appears to be a limitation that impinges on the freedom and right of the parties to contract.

R. C. 2915.09(A)(3), which provides that a noncharitable lessor may rent premises to a charitable organization for bingo operations "for a rental rate that is not more than is customary and reasonable for premises that are similar in location, ***but not in excess of two hundred fifty dollars per bingo session," may well be self-contradictory when applied to the facts *sub judice*. The appellant's premises may justify a reasonable rate of $500 or more per bingo session. A ceiling of $250 per session is arbitrary in my view.

*National Foundation* v. *Fort Worth* (C.A. 5, 1969), 415 F. 2d 41, certiorari denied 396 U. S. 1040 (1970), concerned a city ordinance which regulated by its licensing requirements solicitation of funds by charitable organizations and provided that where costs of solicitation exceeded 20 percent of the amount collected, it would be deemed unreasonable unless certain described circumstances existed.

Thus, in *National Foundation, supra,* there was no ceiling provided, unlike the absolute rental ceiling of $250 per bingo session in the case *sub judice.*

Accordingly, in *National Foundation,* at page 46, the following apropos rationale would make R. C. 2915.09(A)(3) invalid:

"A fixed percentage limitation on the costs of solicitation might be undesirable and inapplicable if applied to all types of charitable organizations। What may be proper in one situation may not be so in other situations. The ordinance before us does not imply a fixed standard but permits a determination of the reasonableness of the ratio between the cost of solicitation and the amount collected. The import of the ordinance is that if the

costs of collection do not exceed twenty percent of the amount collected no further inquiry need be made into collection costs and the amount collected. However, if the ratio of cost of collection to the amount collected does exceed twenty percent, the organization seeking the permit may show that such excess is not unreasonable. Although given the opportunity, the Foundation made no such showing."

In the case *sub judice,* appellant is given no right under the Ohio statute to show that more than $250 rental per bingo session is not unreasonable.

The case of *Serrer* v. *Cigarette Service Co.* (1947), 148 Ohio St. 519, contains a rationale, incident to declaring invalid the Ohio "Unfair Cigarette Sales Act," that is applicable to the bingo statute in the case at bar.

The syllabus in *Serrer, supra,* holds:

"Section 6402-11(*c*)***a part of the so-called 'Unfair Cigarette Sales Act,' containing a formula for determining the minimum prices at which wholesalers of cigarettes may sell the same, (1) fails to recognize and make allowance for the differences in operating costs of different types of wholesalers, (2) creates discrimination in favor of one wholesaler over another, in its application to wholesalers whose operating costs differ, and (3) in such circumstances is violative of the due-process and equal-protection clauses of the federal and state constitutions and is invalid."

It can just as readily be argued and contended in the case *sub judice* that the ceiling on rental of premises for bingo operations, when limited to $250, likewise does not make allowances for the differences in operating costs of premises. A large building certainly should justify a large rental, perhaps far in excess of $250 per night, whereas a small building may well justify a rental of much less than $250. Therefore, such a rental ceiling discriminates in favor of the lessor of a small building as opposed to the lessor of a large building in connection with bingo operations. Justice Zimmerman, in discussing the gist of that case, at page 522 of *Serrer, supra,* stated:

"***Section 6402-11(*c*)***in attempting to prescribe a method for determining minimum sales prices, fails to recognize and provide for cost differentials between the operations of 'service wholesalers' on the one hand and 'cash and carry wholesalers' on the other,***and***hence the statute

as it stands is arbitrary, unreasonable and discriminatory, and violates the due-process and equal-protection clauses of the 14th Amendment to the Constitution of the United States and Section 19, Article I of the Constitution of Ohio."

By a parity of reasoning, it is my view that the bingo statute in the case *sub judice* violates the same due process and equal protection clauses of the federal and state constitutions.

A three-pronged test has been established by the Ohio Supreme Court in determining constitutionality of legislation enacted pursuant to police power. In support thereof, the cases of *Dragelevich* v. *Youngstown* (1964), 176 Ohio St. 23; *Teegardin* v. *Foley* (1957), 166 Ohio St. 449 (statute regulating retail installment sales) and *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376 (ordinance regulating weight loads and width of tires), have been cited in the majority opinion. The three tests or standards are understandable but are difficult to apply. The *Dragelevich* case, *supra,* involved primarily a municipal ordinance which was held invalid because of vagueness and lack of standards. Therefore, it offended due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. It is my view that the *Dragelevich* case does not support the position of the appellees, but contains rationale showing that the police power is not unlimited.

In *Dragelevich, supra,* at pages 30 to 31, in discussing the invalidity of the ordinance banning game devices, the Ohio Supreme Court stated:

"Practically all athletic contests would come under the ban of this ordinance. Football and basketball,*** in fact any game that requires that a score be kept or registered would be subject to seizure by a police officer. Were such drastic powers used, the damage to private property would run into tremendous sums of money. The investment in Youngstown in bowling alleys alone no doubt runs into scores of thousands of dollars. The trial court itself concluded that bowling alleys came under the ban of the ordinance."

In applying this reasoning to the case *sub judice,* I find that the rental ceiling established by statute may be only a fraction of the rental value that the lessor and lessee recognize as the true value. Under the *Dragelevich* test, the statutory rental ceiling is unreasonable, discriminatory, bears no

substantial relation to the purpose sought to be effectuated and is, therefore, unconstitutional.

Likewise, what logical mode of reasoning can be utilized to reach a conclusion that it is good and proper and for the welfare of the community to permit two charitable organizations to operate on the leased premises two nights each week, a total of four nights, but that it is evil and not for the public welfare to have such operation seven nights of the week? The answer, as I see it, is "none."

The *Dragelevich* case, *supra,* at page 30, refers to and excerpts from the syllabi of two earlier Ohio Supreme Court cases, *Teegardin* v. *Foley* (1957), 166 Ohio St. 449, and *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376. Each of those syllabi, as well as the syllabus and rationale in *Dragelevich* itself, requires that in order to constitute a valid exercise of police power, legislation must directly promote the general health, safety, welfare or morals and must be reasonable. Further, the means adopted to accomplish the legislative purpose "must be suitable to the end in view, *must be impartial in operation*\*\*\*must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation." (Emphasis added.) *Froelich, supra,* paragraph three of the syllabus.

*Dragelevich, supra,* at page 30, also states "that the courts have always asserted the right to restrain the exercise of the police power to the extent that private rights may not be arbitrarily or unreasonably infringed. Such cases are within the rights reserved by Section 20, Article I of the Ohio Constitution. *Mirick* v. *Gims, Treas.,* 79 Ohio St., 174."

The majority decision recognizes appellant's contention that because it had a contract to rent the premises for bingo at $500 per session, the rent limitation of $250 per session amounts to a taking of property without due process of law. The answer of the majority to this contention is that the United States Supreme Court and Ohio Supreme Court have repeatedly held that regulatory legislation does not constitute a taking of property, even though economic hardship may result. The cases cited by the majority to support such proposition and conclusion, namely, *Bowles* v. *Willingham* (1944), 321 U. S. 503 (federal war power under Emergency Price Control Act); *Goldblatt* v. *Hempstead* (1962), 369 U. S. 590 (ordinance

56

prohibiting certain types of excavation); *Comtronics, Inc.,* v. *Puerto Rico Tel. Co.* (Puerto Rico 1975), 409 F. Supp. 800, affirmed 553 F. 2d 701 (C.A. 1, 1977) (government monopoly of communication facilities); *Wessell* v. *Timberlake* (1916), 95 Ohio St. 21 (statute regulating interest on chattel loans); *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127 (validity of zoning legislation); *Ghaster Properties, Inc.,* v. *Preston* (1964), 176 Ohio St. 425 (power of state to prohibit billboards adjacent to highways); *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 (ordinance prohibiting housing discrimination), all contain factual situations and legal issues vastly unlike the facts in the present case, and are therefore neither controlling nor applicable. Many of these cases prohibit completely certain types of activity or evil conditions. In the case *sub judice,* there is no complete prohibition of bingo nor any evil condition existing.

For the foregoing reasons, I respectfully dissent.