**FLORIDA HEALTH CARE ASSOCIATION, etc. et al., Plaintiffs,**

v.

**David H. PINGREE, etc. et al., Defendants.**

**No. 79–967–Civ–J–B.**

United States District Court, M. D. Florida, Jacksonville Division.

June 17, 1980.

Harrison T. Slaughter, Jr., Dempsey & Slaughter, Orlando, Fla., for plaintiffs.

Chester G. Senf, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, Fla., for David H. Pingree, The Department of Health & Rehabilitative Services.

Selber & Selber, Jacksonville, Fla., for W. J. Eldreth, Jr., Charles P. Hayes, Jr., M.D., William F. McLear, III, M.D., Northeast Florida Professional Standards Review Organization, Inc.

Gary L. Betz, U. S. Atty., Jacksonville, Fla., for Patricia Harris, The United States Department of Health, Education and Welfare.

OPINION

SUSAN H. BLACK, District Judge.

In 1972, Congress instituted the Professional Standards Review program (hereinafter "the Act") to "promote the effective, efficient, and economical delivery of health care services of proper quality" in the Medicare and Medicaid programs, as well as in other federally funded health care programs. 42 U.S.C. § 1320c. Pursuant to the Act, the Secretary of Health, Education and Welfare (hereinafter "HEW") established areas throughout the nation within which Professional Standards Review Organizations (hereinafter "PSROs") were designated. PSROs are non–profit, professional organizations composed of licensed doctors of medicine and osteopathy residing within the designated area, or organizations approved by the Secretary, whose functions include the monitoring of health care provided to Medicare and Medicaid patients. § 1320c–1(b)(1), (2). In addition, PSROs have been empowered to make final and binding determinations concerning the medical necessity of care actually rendered, whether the quality of care meets professionally recognized standards of health care, and whether reimbursement under the systems is required. § 1320c–4.

To aid in their review, the National Professional Standards Review Council provides each PSRO with materials containing approved regional "norms" of medical practice for the area. § 1320c–5(c)(1). Norms are numerical statistical measures of average, observed performance in the delivery of health care services. 42 CFR 466.2, *Definitions.* The PSRO is to apply the norms of care, diagnosis and treatment in its evaluation of hospital–based health care delivery. § 1320c–5(c)(2).

The defendant, Northeast Florida PSRO, was designated by the Secretary of HEW to conduct reviews in a six county area, including Duval, Clay, Baker, St. Johns, Nassau and Flagler counties. Subsequently, in May 1979, the Northeast Florida PSRO began its review of long–term care facilities, or nursing homes, in the six county area.

On October 30, 1979, plaintiffs commenced this action for mandamus and declaratory relief. Plaintiffs consist of the Florida Health Care Association, (hereinafter "FHCA"), a non–profit corporation composed of member nursing homes located in Florida; St. Jude Manor Nursing Home, Inc., a member of FHCA located in Jacksonville, Florida; and Ellen Cooper and John Galbraith, both of whom are indigent resident patients of Arlington Manor Care Center in Jacksonville, Florida. Plaintiffs' claim is that the Northeast Florida PSRO has failed to obtain and apply professionally developed norms of care in its evaluations and review of plaintiff nursing homes, as is required by § 1320c–5(c)(2). Plaintiffs allege that instead, the defendant, Northeast Florida PSRO, developed in September 1979, a "Plan for Long Term Care" which set forth criteria for its review of nursing homes. Plaintiffs are especially concerned with subsection L, entitled "Norms, Criteria and Standards," which provides:

The Review Organization through its Long–Term Care Committee will be responsible for developing norms, criteria and standards to be used in long–term care activities.

(1) Until such time as more specific criteria are developed, the level of care criteria as contained in the "Level of Care Evaluation Document" shall be considered adequately specific to assess the patients requirements for the ordered care.

(2) The Review Organization will gather data to establish more specific criteria through MCE studies.

Plaintiffs allege that notwithstanding its failure to obtain professionally developed norms of care, diagnosis and treatment based upon typical regional patterns of practice, the Northeast Florida PSRO began its review of nursing homes on May 1, 1979, and based its evaluation on a point–rating system. While asserting no specific or individual injury, plaintiffs claim that the defendant's actions have resulted in a general decline in the level of care provided area Medicare and Medicaid patients and have decreased the amount of reimburse-

ment paid to nursing homes by the Department of Health, Education and Welfare, as well as the Department of Health and Rehabilitative Services, under both federal health programs.

On December 31, 1979, defendants, Eldreth, Hayes, McLear, and Northeast Florida PSRO, filed a Motion to Dismiss with an accompanying memorandum of law. On February 4, 1980, defendants, Pingree and the Department of Health and Rehabilitative Services, adopted the previously filed motion and memorandum as their own. Defendants, Department of Health, Education and Welfare and Secretary Patricia Harris, filed an Answer herein on February 28, 1980. A hearing was held on April 10, 1980, on the defendants' Motions to Dismiss.

■ In their motions, defendants have raised a number of challenges to the Court's jurisdiction in this cause of action. Resolution of whether or not mandamus, an extraordinary remedy, is the appropriate means for obtaining the relief requested in the instant case will render a detailed discussion of the remaining issues unnecessary. Inextricably connected with this issue is the question of whether plaintiffs must exhaust the remedies set forth in 42 U.S.C. § 1320c–8 prior to instituting suit in federal court. If plaintiffs have an alternative remedy, and perhaps even a mandatory one, in the administrative structure, then mandamus may not issue.

Title 28 U.S.C. § 1361 provides the district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." It is an extraordinary remedy and one whose issuance is a matter of judicial discretion. For a writ of mandamus to be appropriate, the following three elements must be present: "(1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Carter v. Seamans*, 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied*, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). *See also, Win-*

*ningham v. United States Department of Housing and Urban Development*, 512 F.2d 617 (5th Cir. 1975). The final requirement, while not determinative if the alternative remedy is incapable of affording adequate relief, is pivotal in understanding § 1361. It underscores the extreme nature of mandamus relief; that is, only when no other remedies exist may a claimant resort to the use of mandamus.

■ In the instant case, the Court finds there is an adequate administrative remedy available to the plaintiffs under the Act. 42 U.S.C. § 1320c–8. At the April 10 hearing, counsel for the plaintiffs admitted that the administrative process had not as yet been attempted by the plaintiffs. In addition, the defendant, Northeast Florida PSRO, stands to lose its contract with the federal government if it is not complying with statutory requirements. The Secretary of HEW can withdraw its designation and establish another agency for purposes of the statute. Accordingly, this Court cannot allow plaintiffs to use the extraordinary remedy of mandamus.

■ As this Court does not have jurisdiction over plaintiffs' claim under 28 U.S.C. § 1361, the Court also lacks jurisdiction over plaintiffs' claim for declaratory relief under 28 U.S.C. § 2201, as § 2201 is procedural and does not provide an independent ground of jurisdiction where none otherwise exists. *See, e. g., National Foundation v. City of Fort Worth, Texas*, 307 F.Supp. 1977 (1967), *aff'd*, 415 F.2d 41 (5th Cir. 1969), *cert. denied*, 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 684 (1970). As this Court lacks jurisdiction over plaintiffs' complaint, discussion of defendants' remaining challenges would be premature. The Court shall enter on this same date an order dismissing plaintiffs' complaint for lack of jurisdiction.