**CITY OF EL PASO, Texas, Appellant,**

v.

**EL PASO JAYCEES, and Garbarino & Johns of Texas, Inc., Appellees.**

**No. 08–87–00151–CV.**

Court of Appeals of Texas, El Paso.

June 1, 1988.

Rehearing Denied Aug. 3, 1988.

Todd Chenoweth, Asst. City Atty., El Paso, for appellant.

Boyd W. Naylor, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellees.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

OPINION

OSBORN, Chief Justice.

In the exercise of its right to regulate charitable solicitation campaigns, what disclosures may a city require in a licensing procedure without violating First Amendment rights?

The federal courts in recent years have addressed this issue on several occasions. Almost without exception, those courts have knocked down the attempted regulations. Almost without exception, those same courts have failed to tell the state and municipal regulators how they can regulate charitable solicitation campaigns other than to suggest a least restrictive means.

The City of El Paso has an ordinance which creates a commission to review applications and to issue permits for individuals and organizations conducting charitable solicitations within the city. The ordinance

specifies certain information which is to be included in the application including the name and address of the organization, the purposes for which the gross receipts from the campaign are to be used, the methods to be used in the campaign, the beginning and ending date of the campaign, the amount of salaries, fees, commissions and expenses to be incurred, and the approximate percentages of funds to be collected which will go to the charity and the approximate percentage which will go for fundraising. If a professional promoter or solicitor is used by the organization, a copy of the written agreement under which the professional operates is to be attached. A permit may be denied if, at the hearing by the commission, it is established that the campaign will not comply with all applicable state and federal laws and city ordinances.

The El Paso ordinance in Section 14–48.1. *Disclosure to the public* provides as follows:

> All solicitors must do the following:
>
> (1) Prior to any and all oral solicitation and any and all television or radio advertisements concerning solicitation, the following statements shall be made by the permittee to persons being solicited:
>
>> City ordinance requires me to disclose to you that approximately (*the percentage of funds stated in the application*) percentage of the solicited funds will go for fundraising and approximately (*the percentage of funds stated in the application*) will actually go to (the charity). More specific information is available from the City Clerk upon request.
>
> (2) Any and all written material, including but not limited to tickets, brochures, information sheets and correspondence delivered by, or caused to be delivered by, the permitee [sic] to persons being solicited; and any and all written advertisements concerning

the solicitation of funds shall contain the following statements in prominent type and in a prominent location on the advertisement:

> City ordinance requires me to disclose to you that approximately (*the percentage of funds stated in the application*) percentage of the solicited funds will go for fundraising and approximately (*the percentage of funds stated in the application*) will actually go to (the charity). More specific information is available from the City Clerk upon request.

If paid telephone solicitors are to be used in a campaign, the application for a permit must contain a copy of a proposed disclosure statement to be read by the telephone solicitors which will disclose the approximate percentage of funds which will go for fund-raising and the approximate percentage of funds which will go to the charity.

The El Paso Jaycees applied for a permit on January 2, 1986, to conduct a fund-raising campaign to begin on February 13, 1986, and end on April 4, 1986. The funds were to be used for community projects and charities and for overhead expenses. As stated in the permit application, the Jaycees were to employ Garbarino & Johns, Inc., a professional fund-raiser to assist in the campaign. The Jaycees also indicated in their application that approximately seventy-five percent of the funds would go to solicitation and promotion, and twenty-five percent to the Jaycees.[1] The 1985 campaign raised $72,117.41 of which $16,783.96 went to the Jaycees and the balance was paid for solicitation, promotion and campaign expenses. The 1986 application estimated a gross income of $71,000.00 which would net the Jaycees $17,750.00.

The Charitable Solicitation Commission of El Paso met on January 13, 1986, to consider the Jaycees' permit. The Jaycees made clear at that hearing their intention not to abide by the mandatory disclosure

---

**1.** The November 9, 1987 issue of *Fortune* entitled "America's Best–Run Charities" indicated that of the fifteen largest charities in 1986, fundraising and administrative expense ran from five percent for CARE to thirty percent for March of Dimes Birth Defects Foundation. While a local Jaycee chapter does not operate on the same level as the largest charities in the country, it must compete for contributions with each of those charities and others.

provision, and the commission denied the permit. After the Jaycees formally protested the denial to the El Paso City Clerk, the City applied for and received a temporary restraining order and upon a hearing, a temporary injunction was denied. The City then filed suit for a permanent injunction and declaratory judgment. After a trial on the merits, the trial court found the requirements of the ordinance to be "unduly restrictive of and unduly burdensome on free speech," and further that the mandatory disclosures "are not the least restrictive means available but extend beyond what is reasonably necessary to serve the Government's interest." The court held the ordinance unconstitutional.

In its first Point of Error the City contends that the trial court erred in holding the mandatory disclosure provisions of the City's charitable solicitation ordinance unconstitutional. The issue requires a balancing of the City's right to establish reasonable regulations under its police power to protect the public from fraud, crime and undue annoyance, and a soliciting organization's right of freedom of speech under the First Amendment of the United States Constitution.

In a case involving the "March of Dimes" and a Fort Worth ordinance first enacted in 1937, the Court recognized that the reasonable regulation of charitable organizations is within the government's police power. *National Foundation v. City of Fort Worth,* 415 F.2d 41 (5th Cir.1969), *cert. denied,* 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 684 (1970). In that case, a permit to solicit funds was denied because the cost of such solicitation was found to exceed the permissible limit of twenty percent of the amount to be raised. The Fort Worth ordinance provided for the issuance of a permit without further inquiry if the cost of collection did not exceed twenty percent of the amount collected. However, if the ratio of the cost of collection to the amount collected exceeded twenty percent, the organization seeking a permit was required to show that the excess was not unreasonable. In that case, the foundation made no such showing.

In 1980, the United States Supreme Court considered the validity of a city ordinance which prohibited door-to-door or on-street solicitations of contributions by charitable organizations unless at least seventy-five percent of the proceeds were to be used directly for the charitable purpose of the organization. *Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). Mr. Justice White, writing for the Court, said charitable solicitations in residential neighborhoods are within the protection of the First Amendment, and that the seventy-five percent limitation was a direct and substantial limitation on protected activity. He concluded that the interest in preventing fraud could be better served by measures less intrusive than a direct prohibition on solicitation.

Four years later in *Secretary of State of Maryland v. Joseph H. Munson Company, Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the United States Supreme Court again considered an act which limited the cost of fund-raising to twenty-five percent, but which made that limitation inapplicable where it would effectively prevent the charitable organization from raising contributions. The Court concluded that the waiver provision, which it said was similar to that in the Fort Worth ordinance, did not save the statute from a constitutional attack. Mr. Justice Blackmun said if the statute creates an unnecessary risk of chilling free speech, it is subject to facial attack.

These and other cases are the subject of a recent annotation on this issue. See Don F. Vaccaro, *Validity and Application of Governmental Limitation on Permissible Amount or Proportion of Fundraising Expenses or Administrative ,Costs of Charitable Organizations,* 15 A.L.R. 4th 1163 (1982). A review of the cases noted reflect a rather consistent effort to limit fund-raising expenses to twenty-five percent of the total sums collected.

Unlike most of the statutes and ordinances noted in that annotation which attempt to put some limitation upon fund-raising costs before a permit will be issued,

the ordinance in this case places no limit upon how much will be spent for fund-raising costs and how much will be paid to the charitable organization. It only seeks to require a full disclosure and leave the decision as to whether the percentage is considered reasonable to the person called upon to contribute. If there is a question as to whether a fraud is being practiced in a charitable solicitation campaign, it is the individual contributors who have the hard facts from which to make a decision and not some committee charged with deciding if a permit should be issued. Those who have served with the Jaycees, or who have benefited from their charity, may choose to contribute if campaign costs are seventy-five percent, as in this case, and others may determine to contribute to those charities whose campaign costs are much smaller.

■ But, at least this ordinance makes no discriminatory regulation at some set percentage of costs to total contributions and provides a way for each resident of the city to know the costs of the campaign and then decide whether that cost is reasonable or excessive according to standards which each giver may choose to use. The ordinance places no limitation on Freedom of Speech and permits each solicitor to say whatever is considered necessary to try to obtain contributions for whatever charity is involved. It is even permissible to point out that part of the cost of the campaign will go toward some event such as a film festival for children, as in this case, and the funds for such an event would not be a part of the funds actually paid to the charitable organization which sponsors the campaign. In Schaumburg, the Court noted that while a city generally may not directly prohibit solicitations, some disclosure procedures "may assist in preventing fraud by informing the public of the ways in which their contributions will be employed.... while leaving to individual choice the decision whether to contribute to organizations that spend large amounts on salaries and administrative expenses." The El Paso ordinance meets that guideline. Finding no violation of guaranteed constitutional rights, Point of Error No. One is sustained.

■ In its next Point of Error the City contends the trial court erred in excluding evidence of the spending practices of the Jaycees. It is urged that the trial court should have heard evidence that part of the funds raised in a prior campaign by the Jaycees were spent on club expenses and not for underprivileged children. The minutes of the Charitable Solicitation Commission on January 13, 1986, reflect that the Commission was advised that the Jaycees would not follow the ordinance concerning a disclosure statement and had not filed a proposed disclosure statement with their application as required by the city ordinance. After the assistant city attorney advised the commission that such conduct would not be complying with a city ordinance as required of all applicants, the commission voted to deny the application. A letter from the city clerk to the president of the El Paso Jaycees advised the reason for the denial was because "your campaign, ... would not comply with all applicable state and federal laws and the City ordinance." There was no suggestion either in the minutes or the notice of a denial that the permit was denied because of improper expenditure of funds from a prior campaign. We conclude the trial court did not err in excluding the evidence as to expenditure of funds from a prior campaign since that was not the basis upon which the permit was denied. Point of Error No. Two is overruled.

The judgment of the trial court is reversed and the ordinance is determined to be constitutional; and, the case is remanded to the trial court for the entry of a permanent injunction.

## OPINION ON MOTION FOR REHEARING

Since our original opinion was issued in this case, the Supreme Court of the United States has issued an opinion in *Riley v. National Federation of the Blind of North Carolina, Inc.,* —— U.S. ——, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988). Again, that Court struck down legislation which governed the solicitation of charitable con-

tributions by professional fund-raisers. The North Carolina statute prohibited professional fund-raisers from retaining an "unreasonable" or "excessive" fee according to a three-tiered schedule. A fee up to twenty percent of the gross receipts collected was deemed reasonable. A fee between twenty percent and thirty-five percent was deemed unreasonable upon a showing that the solicitation did not involve the dissemination of information related to public issues. A fee exceeding thirty-five percent was presumed unreasonable, but the presumption could be rebutted upon the fund-raiser showing that the fee was necessary under certain specified standards.

The Court in that case followed its prior holdings in *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), and in *Secretary of State of Maryland v. Joseph H. Munson Company, Inc.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), and held that using percentages to decide the legality of a fund-raiser's fee is not narrowly tailored to the State's interest in preventing fraud.

Unlike the three recent cases decided by the Supreme Court of the United States, our case does not involve legislation which sets standards based upon a percentage of the fee as related to gross receipts collected, and it does not place any burden on the fund-raiser to show "reasonableness" of a given percentage in order to qualify for a permit or license. It only requires a "truthful disclosure" to those solicited for a charitable contribution. If the city or state is not required to "sit idly by and allow their citizens to be defrauded" as Justice Brennan said, then a simple disclosure to the prospective giver, who should under any test decide what is "reasonable" and what may be "fraudulent" in the fee arrangement, is a least restrictive means of regulation which the courts should approve to protect all charities and all prospective contributors.

The motion for rehearing is overruled.