CITIZENS FOR A BETTER ENVIRONMENT, an Illinois not-for-profit corporation, and Larry A. Hoellwarth, Plaintiffs-Appellees,

v.

VILLAGE OF SCHAUMBURG, Defendant-Appellant.

No. 78–1384.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1978.

Decided Dec. 1, 1978.

Jack M. Siegel, Chicago, Ill., for defendant-appellant.

Michael R. Berman, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, KILKENNY, Senior Circuit Judge,* and BAUER, Circuit Judge.

FAIRCHILD, Chief Judge.

This is an appeal from a judgment wherein a portion of a village code regulating solicitation by charitable organizations was found unconstitutional on its face.

The Village of Schaumburg (hereinafter "the Village"), defendant below and appellant here, is a municipal corporation and home rule municipality located in Cook County, Illinois. Chapter 22 of the Village code regulates the activities of peddlers and solicitors within the Village.

Article II (sections 22–6 through 22–18) regulates the activities of for-profit peddlers and solicitors, defined in section 22–6 as persons who go from place to place to sell or take orders for merchandise or services. A permit is required for such activity, and an application for a permit is to be denied "to any applicant who is not found to be a person of good character and reputation" (section 22–9). The permit may be revoked for violation of any Village ordinance or state or federal law, or when the registrant "shall cease to possess the qualifications and character required . . . for the original registration" (section 22–11). Violators of sections 22–6 through 22–17 are subject to a maximum fine of $500 for each offense (section 22–18).

Charitable solicitations, on the other hand, are regulated by article III (sections 22–19 through 22–24). Section 22–19 defines a charitable organization as "any benevolent, philanthropic, patriotic, not-for-profit, or eleemosynary group, association or corporation, or such organization purporting to be such, which solicits and collects funds for charitable purposes." A charitable purpose is defined as "any charitable, benevolent, philanthropic, patriotic, or eleemosynary purpose." A permit is also required for charitable solicitations, but the requirements for the granting of a permit are different from those for for-profit peddlers and solicitors. For example, the organization must have complied with specified portions of state law relating to charitable solicitations and be recognized as tax exempt under section 501(c)(3) of the United States Internal Revenue Code. Section 22–20(g) requires that 75 percent of the proceeds of solicitations must be used directly for the charitable purpose of the organization. Solicitors' salaries and administrative expenses (which include other employees' salaries) are deemed *not* used for the organization's charitable purpose.[1]

---

* The Honorable John F. Kilkenny, Senior Circuit Judge of the Ninth Circuit, is sitting by designation.

1. The requirement contained in section 22–20(g) is as follows:

  (g) Satisfactory proof that at least seventy-five per cent of the proceeds of such solicitations will be used directly for the charitable

Citizens for a Better Environment (hereinafter "CBE"), plaintiff below and appellee here, is an organization whose stated purpose is the protection and improvement of the Illinois environment. CBE is registered and in good standing with the Illinois Attorney General's Charitable Trust Division, and is recognized as tax exempt and gifts to it as tax deductible under the United States Internal Revenue Code. CBE applied for and was denied a permit to canvass and solicit contributions from door-to-door in the Village and in various other municipalities in the Chicago metropolitan area.[2] CBE and two of its officers brought suit against these municipalities for declaratory judgment and injunction.

The portions of the suit against the other municipalities were concluded in various ways. In the action against the Village, the district court, after recognizing that CBE met all other requirements of section 22–20 and the denial of permission to canvass in the Village was based solely on CBE's failure to meet the 75 percent requirement, declared, upon motion by CBE for summary judgment, that section 22–20(g) and the Village's action thereunder were constitutionally impermissible, enjoined further prohibition of CBE soliciting and canvassing in the Village, and ordered the Village to issue a permit to CBE forthwith. The rationale of the district court was that the 75 percent requirement was an impermissible form of censorship and a restraint on the exercise of First Amendment freedoms, and that the Village had no legitimate interest in prescribing such a test.

## I.

CBE's failure to qualify for a charitable solicitation permit from the Village was caused solely by its inability to meet the 75 percent requirement, and the decision of the district court was limited to that requirement. Therefore on this appeal we are concerned only with the validity of section 22–20(g).

The Village asserts that summary judgment by the district court was improper because material issues of fact were present. The Village raises a question as to the actual nature of CBE's activities; it asserts that as an organization mainly concerned with providing salaries for its members, CBE's activities are not within the protection of the First and Fourteenth Amendments, and thus the district court lacked jurisdiction to pass on the constitutionality of section 22–20(g). The Village also alleges that the 75 percent requirement is a reasonable way to protect its citizens by distinguishing commercial from charitable organizations, and at a minimum a trial was required to determine that reasonableness.

The Village also argues that section 22–20(g) is not unconstitutional on its face. This argument is based on the Village's evaluation of the provisions of chapter 22 in light of previous cases where the regulation of solicitation was declared unconstitutional, and on the Supreme Court's pronouncement that there is no absolute right to enter on private premises and solicit funds.[3] The Village concludes from its evaluation that the fatal flaws of vagueness and impermissible discretion of public officials are not present in chapter 22, that the provisions enjoy a presumption of constitutional validity that has not been overcome, and that any infringement of First Amendment rights is minimal and a result of the Village's legitimate interest in protecting its

purpose of the organization. For such purposes, the following items shall not be deemed to be used for the charitable purposes of the organization, to wit:
(1) Salaries or commissions paid to solicitors;
(2) Administrative expenses of the organization, including, but not limited to, salaries, attorneys' fees, rents, telephone, advertising expenses, contributions to other organizations and persons, except as a charitable contribution and related expenses incurred as administrative or overhead items.

2. Counsel for CBE stated that it is the practice of the organization, regardless of its opinion of the validity of a particular regulation, to comply with municipal permit requirements if possible.

3. *Hynes v. Mayor of Oradell*, 425 U.S. 610, 619, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976).

citizens from fraud by those operating under the guise of charitable organizations.

CBE, on the other hand, argues that summary judgment was proper, alleging that classification of its particular activities is irrelevant to the question of constitutionality. CBE argues that section 22–20(g) is too restrictive of First Amendment freedoms and is thus invalid on its face; it provides an absolute bar to canvassing and soliciting if an organization does not meet the 75 percent requirement, it militates against certain types of organizations, it in effect requests information which has a "chilling effect" on the exercise of First Amendment rights, and it is not intimately related to the purpose of protection of the Village citizens from fraud.

## II.

■ The special principles pertinent to First Amendment challenges lead to the conclusion that this action is properly brought by CBE. CBE applied for and was denied a permit to canvass in the Village. Thus a controversy exists, and CBE has the personal stake in the outcome required by this court in *Grandco Corp. v. Rockford*, 536 F.2d 197, 207 (7th Cir. 1976). In that case a challenge to the facial validity of a movie theater licensing ordinance was allowed where the challenger needed to comply with the ordinance to operate its business and had applied for and been denied a license.

■ Furthermore, in the context of a First Amendment challenge, there is no additional requirement that CBE show it would not have been denied a permit under a constitutionally valid ordinance. This principle was stated by the Supreme Court in *NAACP v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963):

"[T]he instant decree may be invalid if it prohibits, privileged exercises of First Amendment rights whether or not the record discloses that the petitioner has engaged in privileged conduct. For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar."

See also *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741–42, 84 L.Ed. 1093 (1940). This court recognized the principle in *Grandco, supra*.

■ It thus follows that any issue of fact as to the nature of CBE's particular activities is not material to its standing to challenge the Village code on First Amendment grounds and is therefore not an obstacle to the granting of summary judgment.

## III.

We turn now to the constitutional validity of section 22–20(g). The Village asserts that the reasonableness of section 22–20(g) is an issue of fact. Undoubtedly the determination of reasonableness is a factual inquiry in many situations. However, in the present situation we conclude that the question is solely one of law; we perceive no relevant factual questions which require resolution.

We agree with both parties that the appropriate and most recent guidance on the issue before us is to be found in *Hynes v. Mayor of Oradell*, 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). Although the ordinance involved in *Hynes* was invalidated on the ground of vagueness,[4] the general guidelines the decision provides, evaluated in the context of prior decisions on the regulation of solicitation, support our decision here.

The Supreme Court stated in *Hynes* that there is no absolute right to enter on private premises and knock on another's door, and that the police power permits *reasonable* regulation of this activity for the public safety. 425 U.S. at 619, 96 S.Ct. at 1760. However, when this regulation involves First Amendment activity, that regulation must be accomplished " '[so] as not to intrude upon the right of free speech,' " 425 U.S. 616, 96 S.Ct. at 1758–59: it must be

---

4. The ordinance at issue required registration with the police department, for identification purposes, by any person wishing to canvass or solicit for a charitable or political cause.

done "with narrow specificity," 425 U.S. at 620, 96 S.Ct. at 1760, be "suitably designed" to serve the legitimate interest involved, 425 U.S. at 619, 96 S.Ct. at 1760, and must not give broad discretionary powers to municipal officials in granting a permit, 425 U.S. at 617, 96 S.Ct. at 1759.

This framework is consistent with and further explained by previous Supreme Court decisions relating to the regulation of door-to-door solicitation. The Court has recognized the purposes of the protection of the people from fraud and disruption of the peaceful enjoyment of their homes, but has held invalid such regulation when it unreasonably obstructed the collection of funds, *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), or when it, in fact, prohibited canvassing and solicitation, *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939). In *Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), the Court recognized the need to balance the purposes of protection and peace against the traditions and values of free discussion and the dissemination of ideas.

■■ If the restrictions placed on canvassing and soliciting by section 22–20(g) do not meet these standards, then the provision must fail. The fact that CBE may use other methods, such as the mails, to contact Village citizens is not relevant to the First Amendment challenge. See *Va. State Board of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 n. 15, 96 S.Ct. 1817, 1823, 48 L.Ed.2d 346 (1976). In addition, although duly enacted provisions normally enjoy a presumption of constitutionality, the rule is not applicable where there is a question of improper infringement of the exercise of First Amendment rights. See *Organization for a Better Aus-*

*tin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), which vacated an injunction against the peaceful distribution of leaflets, stating that prior restraints bear a heavy burden *against* constitutionality.

■ Section 22–20(g) sets out specific standards for the granting of a permit; if these standards are met, the Village Board must grant the permit. Thus, the provision does not have the same facial defects of vagueness or broad discretion which have resulted in the invalidation of prior regulatory efforts. However, when the Court in *Hynes* stated that a narrowly drawn ordinance which does not give broad discretion to public officials "*may* serve these important [peace and protection] interests without running afoul of the First Amendment," 425 U.S. at 616, 96 S.Ct. at 1759, [emphasis added], it could not have meant that any ordinance which avoids those two pitfalls automatically meets First Amendment standards.

Chapter 22 does present problems similar to those encountered with regulations previously struck down for vagueness. Articles II and III do not necessarily cover all possible situations of door-to-door solicitation. There is, for example, no express exemption from the charitable solicitation provisions for religious or political campaign canvassing combined with solicitation of funds, although this type of activity is arguably within the section 22–19 broad definition.[5] In addition, it is unclear, as Village counsel admits, whether non-scientific research activities could be deemed part of an organization's charitable purpose. The logical implication of excluding all salaries from charitable purpose is that it would not be so classified. Furthermore, it is unclear whether organizations which neither

5. The Village argues that religious and political organizations are not under sections 22–19 through 22–24 because they are not specifically enumerated in section 22–19. This is certainly not apparent on the face of the provision; indeed it seems inconsistent with the broad definition employed. Village counsel admits that inclusion of religious organizations probably would result in impairment of the First Amendment freedoms of such organizations.

The Illinois statutes regulating charitable solicitation employ essentially the same definitions for charitable organization and charitable purpose as the Village code; however, there is express exemption from the registration requirements for religious organizations. Ill.Rev. Stat. ch. 23, §§ 5101(a), (f), 5103(a).

meet the requirements of section 22–20 nor come under the definitions of for-profit peddlers and solicitors are subject to any regulation under the Village code.[6]

Once an organization does fall under the Village's broad definition of charitable organization, however, it is apparently absolutely prohibited from canvassing and soliciting in the Village if it does not meet the 75 percent requirement, or, as the Village suggests in the case of CBE, it is forced to meet the more strict requirements for for-profit activities under sections 22–6 through 22–18. Section 22–19 encompasses not only the traditional concept of charitable organizations—those aiding the poor or disadvantaged, for example, or working to overcome traditionally recognized evils such as disease—but organizations such as CBE holds itself out to be, which serve an information gathering and dissemination function and routinely work to promote legislation or other government action. The Village admits that "public interest" groups could come within the purview of section 22–19. In such an organization paid solicitors often also perform the functions of information dissemination, discussion, and advocacy of public issues. In addition, where the cause is an unpopular one, the salaries paid to solicitors may have to be relatively high to compensate for the increased unpleasantness resulting from public reaction and to ensure that the needed solicitation effort does indeed occur. Certainly other paid members of the organization work to obtain and compile relevant information and promote the organization's position on its target issues. The district court recognized the functional distinction between traditional charitable organizations and those more oriented toward advocacy.

Mr. Justice Brennan, concurring in *Hynes*, noted the importance of canvassing in the areas of political campaigns and public matters, citing particularly the importance of discussion of sensitive and controversial issues. 425 U.S. at 625, 96 S.Ct. at 1763. Although Mr. Justice Brennan recognized the need for more regulation where solicitation of funds is also involved, he was speaking in the context of an ordinance requiring identification; we conclude that the greater regulation he recognized was neither absolute prohibition nor an unnecessary additional burden. But in essence these are the consequences organizations which combine solicitation with their other activities must face.[7]

■ We do not decide the reasonableness of the 75 percent requirement as applied to solicitation by the more traditional charitable organizations. However, for the reasons stated below, the requirement is on its face unreasonable when applied to an organization which by its nature allegedly devotes a large portion of its efforts to information gathering and promotion of its objectives, and where its paid solicitors necessarily combine solicitation with other primary activities of the organization.

The Village has a legitimate interest in protecting its citizens from fraud by solicitors who will use the funds collected for purposes other than those expressly or impliedly represented. It has a similar protection interest in identifying organizations where the salaries paid are so large in relation to the services provided that the organ-

---

6. The Village alleges that CBE, at least, can apply for a permit under the for-profit provisions. It is not clear that CBE would come within the definition of section 22–6, and we note that organizations *purporting* to be charitable come under section 22–19. More importantly, however, as we have already stated, we are concerned here not with the particular characteristics of CBE but instead with the impact of section 22–20(g) on organizations of the type CBE purports to be.

7. This court has also recognized the evils of absolute prohibition of canvassing for funds by "a non-profit group that expresses essentially political ideas." In a *per curiam* opinion reversing the denial of a preliminary injunction sought by CBE in *Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689 (7th Cir. 1975), the court condemned, in spite of the legitimate municipal interest in guarding the privacy of citizens and protecting them from fraud, a blanket prohibition on charitable solicitations except upon the request or invitation of residential owners or occupants. The court's characterization of CBE in that decision does not, of course, bind the Village here.

ization is actually a for-profit venture. The 75 percent requirement *might* be valid where solicitors represent themselves as mere conduits for contributions. But the requirement as it exists in the Village code also applies where it is made clear that the contributions will be used for reasonable salaries of those who will gather and disseminate information relevant to the organization's purpose. Thus the standard is not a sufficiently narrow solution to the problems of potential fraud or to the need to identify those organizations entitled only to the protections afforded commercial speech. The freedom of expression of organizations which do not present these problems is also infringed, either by absolute prohibition or the additional burden of the for-profit permit requirements.

In *Schneider* the Supreme Court stated that although abridgment of First Amendment freedoms may be an efficient and convenient means to prevent fraud and trespass, these considerations cannot justify such abridgment. See also Justice Brennan's concurrence in *Hynes,* quoting *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 323, 89 L.Ed. 430, 440 (1945):

> "[I]n the area of First Amendment protections, '[t]he rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. . . . Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending.'"

425 U.S. at 628, 96 S.Ct. at 1764. Section 22–20(g) does not meet this standard.

Our conclusion is not inconsistent with the Fifth Circuit's decision in *Nat'l Foundation v. City of Ft. Worth,* 415 F.2d 41 (5th Cir. 1969), *cert. denied,* 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 684 (1970). That decision upheld an ordinance which limited the cost of solicitation of charitable contributions to 20 percent of total receipts. However, the ordinance also allowed an organization which did not meet the requirement

to show that its percentage was not unreasonable. The court recognized that within the broad class of charitable organizations a rigid percentage requirement would be difficult to justify, stating:

> "A fixed percentage limitation on the costs of solicitation might be undesirable and inapplicable if applied to all types of charitable organizations. What may be proper in one situation may not be so in other situations. The ordinance before us does not imply a fixed standard but permits a determination of the reasonableness of the ratio between the cost of solicitation and the amount collected."

Section 22–20(g) provides no similar flexibility.

Accordingly, the decision of the district court is affirmed.