PAULSON, Justice.
 

 The State of North Dakota appeals from an order of the district court of Burleigh County, denying the State’s petition for a preliminary injunction, dissolving a temporary restraining order and receivership, denying all of the State’s claims against ap-pellees for alleged violations of Chapter 50-22, N.D.C.C. (Charitable Organizations Soliciting Contributions); Chapter 51-12, N.D. C.C. (False Advertising); and Chapter 51-15, N.D.C.C. (Consumer Fraud and Unlawful Credit Practices), and certifying for trial one issue concerning damages for violation of registration and permit requirements for professional solicitors and fund raisers. The order is based upon the court’s conclusion in its memorandum opinion, and modified by its addendum thereto, that § 50-22-04.1, N.D.C.C., is, in part, unconstitu
 
 *839
 
 tional. We affirm in part and reverse in part and remand.
 

 On November 10, 1980, the attorney general filed a complaint alleging the Knights of Columbus, Council 1604, contracted with appellees, W.R.G. Enterprises, Inc. (WRG), to promote a musical production of the Del Reeves Show. Under the terms of the contract, WRG was to conduct a telephone solicitation campaign for advance ticket sales; the Knights of Columbus was to pay WRG from the funds collected and was also to pay the actual costs for producing the show.
 

 The Knights of Columbus was planning to use the money collected for its various charitable activities. WRG began its telephone solicitation sales campaign. The attorney general alleged in the complaint that these solicitations were made for charitable purposes.
 

 Neither the Knights of Columbus nor WRG submitted their contract to the secretary of state for his approval. Nor did WRG or Nancy Parkinson register with the secretary of state’s office, as required by § 50-22-02.1, N.D.C.C. Nancy Parkinson is a professional solicitor who solicited funds for the Knights of Columbus for this campaign.
 

 Notice of the campaign and the solicitations came to the attention of the attorney general’s office. A lawsuit was commenced by that office alleging that the contract entered into between the Knights of Columbus and WRG violated Chapter 50-22, NDCC, Charitable Organizations Soliciting Contributions.
 

 It was further alleged that the solicitations based on charitable appeals constituted false and misleading statements which had a tendency and capacity to deceive or mislead, and thus were in violation of Chapter 51-15, N.D.C.C., Consumer Fraud and Unlawful Credit Practices, and Chapter 51-12, N.D.C.C., False Advertising.
 

 At the time of filing the lawsuit, and without notice to either WRG or the Knights of Columbus, the State alleged that irreparable harm would result to the people of the State of North Dakota and an ex parte temporary restraining order was issued by the district court.
 

 The State also alleged that WRG and Nancy Parkinson were about to leave the state or conceal their assets. A receiver was therefore appointed.
 

 An order to show cause hearing was set to determine why the temporary restraining order should not be made a preliminary injunction pending final resolution of the case on the merits. The hearing was held on December 10, 1980, in the district court, the Honorable District Judge Dennis A. Schneider presiding. All parties were present and presented oral .argument.
 

 Judge Schneider issued a memorandum opinion on March 11, 1981, which declared various provisions of Chapter 50-22, N.D. C.C., unconstitutional. Subsequent to its memorandum opinion the court issued an order on March 23,1981. That order denied the State’s motion to restrain and enjoin the appellees from alleged violations of Chapters 50-22, N.D.C.C. (Charitable Organizations Soliciting Contributions), 51-12, N.D.C.C. (False Advertising), and 51-15, N.D.C.C. (Consumer Fraud and Credit Practices). The order further denied the State’s petition for permanent injunction and dissolved the temporary injunction issued on November 21, 1980, and also dissolved the receivership. The court’s order certified one issue for trial, that issue concerning damages for violation of registration and permit requirements.
 

 The State’s appeal is from this order.
 

 On March 27, 1981, Judge Schneider issued an addendum to his memorandum opinion. This addendum stated that only that part of § 50-22-04.1, N.D.C.C.,
 
 [1]
 
 which
 
 *840
 
 placed a fifteen percent limitation on expenses to be paid by a charitable organization to professional fund raisers and professional solicitors was unconstitutional. The prior memorandum opinion was adopted and affirmed in all other respects.
 

 Both of the parties to this action concede the appealability of the March 23, 1981, order. WRG has raised the issue of the constitutionality of § 50-22-04.1.
 

 We said in
 
 Devine v. Fitzpatrick,
 
 258 N.W.2d 247, 248 (N.D.1977), that, under § 28-27-02(2) and (3), N.D.C.C., an order of the district court dissolving a temporary restraining order after a hearing on notice is an appealable order. The order of the district court in this case denied a preliminary injunction and dissolved a temporary restraining order. The order is an appeala-ble order.
 

 Ordinarily, a memorandum opinion is not an order and is, therefore, not appeal-able. In the instant case, the March 23, 1981, order of the district court, which supplements the memorandum opinion issued by Judge Schneider, is appealable. The memorandum, and the addendum thereto, stated that that part of § 50-22-04.1, N.D. C.C., which places a 15% limit on expenses for professional fund raisers and solicitors, is an unconstitutional infringement on free speech.
 

 Before discussing the constitutionality issue, the trial court stated in its memorandum opinion that the central issue of the case dealt with WRG’s claim of the unconstitutionality of Chapter 50-22, N.D.C.C., governing Charitable Organizations Soliciting Contributions. The court further noted that it should avoid deciding the question of constitutionality of the statute if the case could be decided on other grounds. The trial court then stated:
 

 “It is clear to this Court that it cannot avoid the question of the challenged constitutionality of the Charitable Solicitations Law.”
 

 
 *841
 
 We agree with the trial court and the parties to this case that the issue of whether or not that part of § 50-22-04.1, NDCC, which places a 15% limit on expenses for professional fund raisers or professional solicitors, is unconstitutional is the central issue of this case. Therefore, we address the issue of the constitutionality of the statute.
 

 The crucial issue of this appeal is whether or not the 15% limitation placed on the amount a charitable organization can pay to a professional fund raiser or professional solicitor, pursuant to § 50-22-04.1, N.D. C.C., is unconstitutional. That statute provides in pertinent part:
 

 “50-22-04.1. Limitations on amount of payments for solicitation or funding. No charitable organization shall pay or agree to pay to a professional solicitor, professional fund raiser on his agents, servants, or employees in the aggregate a total amount in excess of fifteen percent, (including reimbursement for expenses incurred and direct payment of expenses incurred), of the total moneys, pledges, or other property raised or received by reason of any solicitation activities or campaigns.”
 

 The attorney general contends that the statute is a reasonable exercise of the State’s police power to protect the public from fraud. W.R.G., on the other hand, contends that the statute unconstitutionally restricts free speech.
 

 The United States Supreme Court in
 
 Bates v. State of Arizona,
 
 433 U.S. 350, 363, 97 S.Ct. 2691, 2699, 53 L.Ed.2d 810 (1977), recognized that solicitation is speech and, as speech, is deserving of First Amendment protections. The court stated:
 

 “[O]ur cases long have protected speech even though it is in the form of ... a solicitation to pay or contribute money,
 
 New York Times Co. v. Sullivan,
 
 [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)].”
 

 Schaumburg v. Citizens for a Better Environment,
 
 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73, (1980), recognized that the charitable solicitor is deserving of these protections.
 

 The United States Supreme Court in
 
 Schaumburg, supra,
 
 100 S.Ct. at 831-833, discussed former cases dealing with regulations on canvassing and soliciting by charitable and religious groups. The court then stated at 100 S.Ct. at pages 833-834:
 

 “Prior authorities, therefore, clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests ... that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease.”
 

 The State may regulate in the area of the First Amendment but it must do so by regulations which are narrowly drawn and designed to serve the State’s interests without unnecessarily interfering with First Amendment freedoms.
 
 Hynes v. Mayor of Oradell,
 
 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). “Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone ... . ”
 
 NAACP v. Button,
 
 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963) (citations omitted).
 

 We have stated in
 
 State ex rel. Hjelle v. A Motor Vehicle, Etc.,
 
 299 N.W.2d 557 (N.D.1980), that a statute is deemed to pass constitutional muster until it is clearly and conclusively shown that it does not. We are also aware, however, of the language of the Circuit Court of Appeals in
 
 Citizens for Better Environment v. Village of Schaumburg,
 
 590 F.2d 220, 224 (7th Cir. 1978),
 
 aff’d
 
 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), that:
 

 “Although duly enacted provisions normally enjoy a presumption of constitutionality, the rule is not applicable where
 
 *842
 
 there is a question of improper infringement of the exercise of First Amendment rights. See
 
 Organization for a Better Austin v. Keefe,
 
 402 U.S. 415, 419, 91 S.Ct. 1575 [1577], 29 L.Ed.2d 1 (1971).”
 

 The first question within the issue of the constitutionality of that part of § 50-22-04.1 which places a limitation of 15% of the total moneys collected or pledged on fees that can be paid for a professional fund raiser or solicitor is whether or not that limitation unduly intrudes upon the rights of free speech.
 

 The State argues that § 50-22-04.1, N.D. C.C., is constitutional with respect to the 15% limitation on fees paid for professional fund raisers or solicitors because the statute has a built-in “safety value” which upheld a city ordinance against a constitutional attack in
 
 National Foundation v. City of Fort Worth,
 
 415 F.2d 41 (5th Cir. 1969),
 
 cert. denied,
 
 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 684. In
 
 Fort Worth, supra,
 
 the city code section in question, Sec. 32-5(g), Fort Worth City Code (1964), provided that:
 

 “Any such cost [of solicitation] in excess of twenty percent of the amount collected shall be deemed unreasonable unless special facts or circumstances are presented showing that a cost higher than twenty percent is not unreasonable.”
 

 The Fifth Circuit Court of Appeals upheld the constitutionality of the ordinance, stating in
 
 Fort Worth, supra,
 
 at 46:
 

 “A fixed percentage limitation on the costs of solicitation might be. undesirable and inapplicable if applied to all types of charitable organizations. What may be proper in one situation may not be so in other situations. The ordinance before us does not imply a fixed standard but permits a determination of the reasonableness of the ratio between the cost of solicitation and the amount collected. The import of the ordinance is that if the costs of collection do not exceed twenty percent of the amount collected no further inquiry need be made into collection costs and the amount collected. However, if the ratio of cost of collection to the amount collected does exceed twenty percent, the organization seeking the permit may show that such excess is not unreasonable. Although given the opportunity, the Foundation made no such showing.”
 

 The State’s argument, based on
 
 Fort Worth, supra,
 
 is that in North Dakota a charitable organization may not pay to a professional fund raiser or solicitor any fee in excess of 15% of the total money or pledges raised, under § 50-22-04.1, N.D. C.C. The statute further provides, however, that a charitable organization may not expend for total expenses more than 35% of the moneys or pledges raised. Section 50-22-04.1, N.D.C.C., also provides that if a charitable organization can show the existence of special facts, the charitable organization may petition the secretary of state who, in his discretion, may allow the charitable organization to incur total expenses greater than 35% of the total funds collected or pledged.
 

 The State points out that the 15% limit placed on the charitable organization and professional fund raiser or solicitor is absolute at the time of contracting but, if the charitable organization can demonstrate the need for expenses greater than 35%, those expenses are allowable because nothing in the statute defines special circumstances, and nothing in the statute would preclude the inclusion of expenses greater than 15% for the services of a professional fund raiser from being included in these special circumstances. The State urges us to interpret this special circumstances exception to include the need to pay a professional fund raiser or solicitor in excess of 15% so as to make it constitutional under the rationale of
 
 Fort Worth, supra.
 
 The statute is silent where fees for a professional solicitor or fund raiser exceed 15% while the total expenses for solicitation may meet the 35% limitation.
 

 WRG focuses its argument on the case of
 
 Village of Schaumburg v. Citizens for a Better Environment,
 
 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), wherein the United States Supreme Court held unconstitutional a village ordinance which prohibited
 
 *843
 
 door-to-door or on-street solicitation of contributions by charitable organizations that do not use at least 75% of their receipts for “charitable purposes,” such purposes being defined to exclude solicitation expenses, salaries, overhead, and other administrative expenses.
 

 The Supreme Court noted that the Court of Appeals distinguished between traditional charitable organizations and advocacy-oriented organizations, but concluded that even if the 75% requirement might be valid as applied to certain types of charitable solicitation, the requirement was unreasonable on its face because it barred solicitation by a class of advocacy-oriented organizations even where the contributions would be used for reasonable salaries of those who gathered and disseminated information relevant to the organization’s purpose.
 
 Schaumburg, supra,
 
 100 S.Ct. at 835-836.
 

 The Supreme Court in
 
 Schaumburg, supra,
 
 100 S.Ct. at 835, n. 9, distinguished the ordinance in question from the ordinance upheld in
 
 National Foundation
 
 v.
 
 Fort Worth,
 
 415 F.2d 41 (8th Cir. 1969),
 
 cert. denied,
 
 396 U.S. 1040, 90 S.Ct. 688, 24 L.Ed.2d 864 (1970), on the basis that the Village of Schaumburg ordinance held “no provision permitting an organization unable to comply with the 75% requirement to obtain a permit by demonstrating that its solicitation costs are nevertheless reasonable.”
 

 The portion of § 50-22-04.1, N.D.C.C., in question, involves only one of the factors which may be included in the total expenses of a charitable organization, that is, the fees of a professional solicitor or professional fund raiser.
 

 The United States Supreme Court in
 
 Schaumburg, supra,
 
 100 S.Ct. at 834, states that charitable solicitation has not been dealt with in United States Supreme Court cases as a variety of purely commercial speech. The only relevant distinction between commercial and non-commercial speech and their relationship to the First Amendment is in the application of the overbreadth doctrine.
 
 Schaumburg, supra,
 
 100 S.Ct. at 834, n. 7.
 

 The trial judge, in his memorandum opinion, determined that the instant case involved commercial speech. He further recognized that the State has a legitimate right to regulate commerce through its police power but that the law was overly broad, and concluded that the prevention of fraud could be better served by measures less intrusive than a direct prohibition of solicitation. His memorandum opinion, as amended by his addendum, states:
 

 “This Court can see no reasonable relationship of the 15% limitation as it relates to any legitimate goal of the legislation. While a statute assuring that some sum certain or percentage should go to charity if collected for that purpose is a laudable purpose, that statute must be narrowly drawn and the justification must be strong when the statute approaches the tender and broad right of the First Amendment. After all, percentage limitation in and of itself will not prevent or deter fraud or crime.
 

 “Nor does this 15% limitation statute have an escape valve as in
 
 National Foundation
 
 v.
 
 Fort Worth,
 
 415 F.2d 41 (CA5 1969), cert denied, 396 U.S. 1040, 24 L.Ed.2d 684, 90 S.Ct. 688 (1970). Section 50-22-04.1 provides that the contract for a charitable solicitation effort agreed to by the parties must be approved by the Secretary of State. If he disapproves the contract, they may have a hearing before him. But nowhere in the statute is he permitted, as in
 
 National Foundation, supra,
 
 to issue the permit upon a showing that an excess of the 15% limitation on expenses is nonetheless reasonable. It simply states that solicitation without approval of the contract by the secretary of state and without a permit is prohibited, and the permit cannot be issued if the 15% limitation is exceeded.
 

 “In summary, this Court cannot enjoin the defendants from a solicitation campaign where less than 85% is going to charity since the 15% limitation statute is unconstitutional.”
 

 
 *844
 
 We believe that the trial judge was correct in his analysis. Our reading of § 50-22-04.1, N.D.C.C., is that the 15% limitation on expenses for a professional fund raiser or solicitor is not a flexible limitation as argued by the attorney general. Section 50-22-04.1, provides, in part:
 

 “If the contract or arrangement with a professional solicitor does not provide for compensation on a percentage basis, the secretary shall examine the contract to ascertain whether the compensation to be paid in such circumstances is likely to exceed fifteen percent of the total moneys, pledges, or other property raised or received as a result of the contract or arrangement; if the reasonable probabilities are that the compensation will exceed fifteen percent of the total moneys, pledges, or other property, the secretary
 
 shall
 
 disapprove the contract or arrangement within ten days after its filing. No registered charitable organization or professional solicitor shall carry out or execute a disapproved contract, or receive or perform services, or receive or make payments pursuant to a disapproved contract. Any party to a disapproved contract shall, upon written request made within thirty days of disapproval, be given a hearing before the secretary within thirty days after such request is filed.” [Emphasis added.]
 

 The case of
 
 Metromedia, Inc. v. City of San
 
 Diego, - U.S. -, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), dealt with both commercial and non-commercial communications in the context of the First Amendment. The United States Supreme Court stated that commercial speech has a limited measure of protection.
 
 Metromedia, supra,
 
 101 S.Ct. at 2892. The Supreme Court also pointed out, in
 
 Metromedia, supra,
 
 101 S.Ct. at 2892, the four-part test for determining the validity of government restrictions on commercial speech, as distinguished from more fully protected speech, which it adopted in
 
 Central Hudson v. Public Service Comm’n,
 
 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).
 

 “(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no farther than necessary to accomplish the given objective.
 
 Id.,
 
 at 563-566, 100 S.Ct. at 2350-2351.”
 

 WRG’s argument is that the 15% limitation does not pass the above test because it does not advance the State’s interest in protecting the public from fraud and that the statute goes farther than permissible. We agree.
 

 The language in
 
 Central Hudson, supra,
 
 100 S.Ct. at 2350, is pertinent to our decision. There the court stated:
 

 “The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation.
 

 “If the communication is neither misleading nor related to unlawful activity, the government’s power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State’s goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government’s purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.”
 

 The State argues that the purpose of § 50-22-04.1, N.D.C.C., is to control charitable soliciting and to protect the public from fraud. This argument, however, was not accepted by the United States Supreme Court in
 
 Schaumburg, supra,
 
 100 S.Ct. at 836:
 

 
 *845
 
 “The Village urges that the 75-percent requirement is intimately related to substantial government interests ‘in protecting the public from fraud, crime and undue annoyance.’ These interests are indeed substantial, but they are only peripherally promoted by the 75-percent requirement and could be sufficiently served by measures less destructive of First Amendment interests.
 

 “Prevention of fraud is the Village’s principal justification for prohibiting solicitation by charities that spend more than one-quarter of their receipts on salaries and administrative expenses. The submission is that any organization using more than 25% of its receipts on fundrais-ing, salaries and overhead is not a charitable, but a commercial, for profit enterprise and that to permit it to represent itself as a charity is fraudulent. But, as the Court of Appeals recognized, this cannot be true of those organizations that are primarily engaged in research, advocacy or public education and that use their own paid staff to carry out these functions as well as to solicit financial support. The Village, consistently with the First Amendment, may not label such groups ‘fraudulent’ and bar them from canvassing on the streets and house to house. Nor may the Village lump such organizations with those that in fact are using the charitable label as a cloak for profitmaking and refuse to employ more precise measures to separate one kind from the other.”
 

 We believe that the 15% limitation in question unduly infringes on First Amendment rights. The Seventh Circuit Court of Appeals in
 
 Schaumburg, supra
 
 590 F.2d at 225, pointed out that the Village of Schaumburg admitted that “public interest” groups could come within the purview of its definition of a charitable organization,
 
 [2]
 
 which is similar to the definition for charitable organizations in § 50-22-01(2), N.D.C.C.
 
 [3]
 

 The 15% limitation imposed by § 50-22-04.1, N.D.C.C., applies to all charitable organizations that hire professional solicitors or fund raisers. The Seventh Circuit Court of Appeals in
 
 Schaumburg, supra,
 
 590 F.2d 220, at 225 (1978), recognized that “public interest” groups often employ professional solicitors. The court then stated:
 

 “In addition, where the cause is an unpopular one, the salaries paid to solicitors may have to be relatively high to compensate for the increased unpleasantness resulting from public reaction and to ensure that the needed solicitation effort does indeed occur.”
 

 In addition to certain public interest groups, small charitable organizations, similar to the Knights of Columbus, Council 1604, in the instant case, whose campaigns for funds would not be of a scale enabling them to hire a professional fund raiser or solicitor at 15% of the total moneys collected or pledged are, in effect, denied access to that medium of expression. On the other hand, large organizations whose campaigns involve large amounts of money can easily pay a professional fund raiser or solicitor with 15% of the total funds collected or pledged.
 

 
 *846
 
 Section 50-22-04.1 does not allow registrants to exceed the 15% limitation on an initial application for the right to solicit funds as is the case with the ordinance involved in
 
 Fort Worth, supra.
 
 The fact that a contract between a charitable organization and a professional fund raiser or solicitor is to be voided by the secretary of state if the professional fund raiser or solicitor is to receive over 15% of the total funds collected or pledged, in essence, amounts to a prior restraint on the speech of those who are parties to the contract.
 

 We agree with Justice White’s reasoning in
 
 Schaumburg, supra,
 
 100 S.ct. at 836-837, where he states:
 

 “The Village’s legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation. Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly.
 
 Schneider v. State (Town of Irvington) supra,
 
 308 U.S. [147] at 164, 60 S.Ct. [146] at 152 [84 L.Ed. 155];
 
 Cantwell v. Connecticut, supra,
 
 310 U.S. [296] at 306, 60 S.Ct. [900] at 904 [84 L.Ed. 1213];
 
 Virginia Pharmacy Board v. Virginia Consumer Council, supra,
 
 425 U.S. [748] at 771, 96 S.Ct. [1817] at 1830 [48 L.Ed.2d 346] (1976). [Footnote omitted.] Efforts to promote disclosure of the finances of charitable organizations also may assist in preventing fraud by informing the public of the ways in which their contributions will be employed. Such measures may help make contribution decisions more informed, while leaving to individual choice the decision whether to contribute to organizations that spend large amounts on salaries and administrative expenses.”
 

 Therefore, we conclude that the 15% limitation is a direct and substantial limitation on protected activity that cannot be sustained because it does not directly serve the State’s interest in preventing fraud. The State’s justification that the statute protects the public from fraud is inadequate, and that part of § 50-22-04.1, N.D.C.C., which imposes a limitation of 15% of the total moneys collected or pledged that a charitable organization can pay as fees for a professional fund raiser or solicitor cannot withstand scrutiny under the First Amendment.
 

 The second part of the State’s appeal involves the issue of the propriety of the trial court’s order of March 23, 1981 which denied the State’s motion to restrain and enjoin the appellees from alleged violations of Chapter 50-22 (Charitable Solicitation); Chapter 51-12 (False Advertising); and Chapter 51-15 (Consumer Fraud and Unlawful Credit Practices). The order also denied the State all injunctive relief. The order further provided:
 

 “that the issue of damages remaining unsettled be and the same is hereby certified for trial before a jury at the earliest agreeable time, provided, however, that said jury question is limited to the violation of registration and permit requirements and that the issue of punitive damages is reserved for the court as reservations pertaining to the jurisdiction of the Attorney General in seeking punitive damages.”
 

 The State contends that the order, in essence, denies the State’s causes of action brought under the false advertising law and the consumer fraud and unlawful credit practices law.
 

 Reviewing the language of the order dated March 23, 1981, we find it confusing. Part of the confusion results from the reference to the issue of punitive damages. The State’s complaint does not seek punitive damages but, rather, seeks civil damages under § 51-15-11, N.D.C.C. A review of the memorandum opinion as modified by the addendum thereto, which formed the basis for the court’s order, also discusses the issue in terms of punitive damages, so it does not sufficiently guide us in determining what is the intended effect of the order.
 

 To clarify the matter we will construe the order to mean that the only issue certified for trial is the issue of damages for the violation of registration and permit requirements under § 50-22-02.1, and that the State’s causes of action for alleged violations of the false advertising law and con
 
 *847
 
 sumer fraud and unlawful credit practices law were, essentially, dismissed. Assuming that is what the order means, it is in error and, in the light of that construction, we reverse the order and remand for consideration at trial, along with the issue already certified, the merits of the State’s claims for alleged violations of the false advertising law and consumer fraud and unlawful credit practices law.
 
 See Brown v. Quinlan, Inc.,
 
 138 F.2d 228 (7th Cir. 1943).
 

 Therefore, we hold that the order of the district court is affirmed as to those portions based upon the unconstitutionality of that part of § 50-22-04.1 which provides for a 15% limitation on fees for a professional fund raiser or professional solicitor. We further hold that that part of the order dismissing the State’s causes of action for violations of the false advertising law and the consumer fraud and unlawful credit practices law is reversed and remanded.
 

 ERICKSTAD, C. J., PEDERSON and SAND, JJ., and EVERETT NELS OLSON, District Judge, concur.
 

 OLSON, District Judge, sitting in place of VANDE WALLE, J., disqualified.
 

 [1]
 

 . Section 50-22-04.1, N.D.C.C., states in its entirety:
 

 “50-22-04.1. Limitations on amount of payments for solicitation or funding. No charitable organization shall pay or agree to pay to a professional solicitor, professional fund raiser or his agents, servants, or employees in the aggregate a total amount in excess of fifteen percent, (including reimbursement for expenses incurred and direct
 
 *840
 
 payment of expenses incurred), of the total moneys, pledges, or other property raised or received by reason of any solicitation activities or campaigns.
 

 “No charitable organization shall incur solicitation and fund-raising expenses, (including not only payments to professional solicitors, but also payments to professional fund raisers and internal fund-raising and solicitation salaries and expenses), in excess of thirty-five percent of total moneys, pledges, or other property raised or received by reason of any solicitation, gift and fund-raising activities or campaigns. As used in this subsection, the term ‘internal fund-raising and expenses’ shall include, but not be limited to, such portions of the charitable organization’s salary and overhead expenses as are fairly allocable, (on a time or other appropriate basis), to its solicitation and fund-raising expense. In the event special facts or circumstances are presented showing expenses higher than thirty-five percent, the secretary has the discretion to allow such higher funds and may impose such conditions as he shall deem necessary for such exemption.
 

 “For purposes of this section, the total moneys, funds, pledges, 'or other property raised or received shall not include the actual cost to the charitable organizations or professional solicitor of goods sold or service provided to the public in connection with the soliciting of contributions.
 

 “Every contract, written agreement, or written statement of the nature of the arrangement to prevail in the absence of a contract between a professional fund raiser or professional solicitor and a charitable organization shall be filed with the secretary of state within ten days after such contract, written agreement, or written statement is concluded. If the contract or arrangement with a professional solicitor does not provide for compensation on a percentage basis, the secretary shall examine the contract to ascertain whether the compensation to be paid in such circumstances is likely to exceed fifteen percent of the total moneys, pledges, or other property raised or received as a result of the contract or arrangement; if the reasonable probabilities are that the compensation will exceed fifteen percent of the total moneys, pledges, or other property, the secretary shall disapprove the contract or arrangement within ten days after its filing. No registered charitable organization or professional solicitor shall carry out or execute a disapproved contract, or receive or perform services, or receive or make payments pursuant to a disapproved contract. Any party to a disapproved contract shall, upon written request made within thirty days of disapproval, be given a hearing before the secretary within thirty days after such request is filed.”
 

 Our opinion is limited to that part of § 50-22-04.1, N.D.C.C., which provides for the limitation on expenses for a professional fund raiser or solicitor of 15% of the total funds collected or pledged.
 

 [2]
 

 . Section 22-19 of the Village Code defines a charitable organization as “any benevolent, philanthropic, patriotic, not-for-profit, or eleemosynary group, association or corporation, or such organization purporting to be such, which solicits and collect funds for charitable purposes.” A charitable purpose is defined as “any charitable, benevolent, philanthropic, patriotic, or eleemosynary purpose.”
 

 [3]
 

 . Section 50-22-01.2, N.D.C.C., states:
 

 “ ‘Charitable organization’ means any benevolent, philanthropic, patriotic, or eleemosynary organization or one purporting to be such except organizations soliciting funds for institutions of higher learning, and organizations soliciting funds for churches operating and having a place of worship within the state. This definition shall not be deemed to include duly constituted religious organizations or any group affiliated with and forming an integral part of said organization no part of the net income of which inures to the direct benefit of any individual and which have received a declaration of current tax status from the government of the United States: provided, that no such affiliated group shall be required to obtain such declaration if the parent or principal organization shall have obtained same.”