INTERNATIONAL MARATHONS, INC. vs. ATTORNEY GENERAL
& another.[1]

Suffolk.   March 8, 1984. — July 3, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Moot case. *Corporation,* Charitable corporation. *Charity.*

Where the activities of a promoter engaged in the sale of commercial spon-
sorships in connection with the running of the Boston Marathon road
race were noncharitable in nature and were conducted under a contract
with the Boston Athletic Association which had been held to be invalid,
this court did not have occasion to rule on the promoter's constitutional
claim that provisions of G. L. c. 68, § 21, limiting the amounts that
may be paid by charities to professional solicitors, infringes the free
speech rights of the regulated charities. [378-381]

CIVIL ACTION commenced in the Superior Court Department
on April 6, 1983.

The case was heard by *Steadman,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Edward J. Barshak (Jeffrey S. Stern & Tina M. Traficanti*
with him) for the plaintiff.

*George C. Caner, Jr. (Thomas H. Hannigan, Jr.,* with him)
for Boston Athletic Association.

*Catharine W. Hantzis,* Assistant Attorney General (*Leslie
G. Espinoza,* Assistant Attorney General, with her) for the
Attorney General.

LYNCH, J. A complaint was brought in the Superior Court
by the plaintiff, International Marathons, Inc. (IMI), for judi-
cial review pursuant to G. L. c. 30A, § 14, of a decision
entered by a hearing examiner on behalf of the division of pub-

---

[1] The Boston Athletic Association was permitted to intervene as a party
defendant.

lic charities of the Attorney General's office (division). The hearing examiner's decision, which affirmed a previous decision of the division, disapproved a contract between IMI and the Boston Athletic Association (BAA) as violative of G. L. c. 68, § 21, because IMI, in its capacity as a professional solicitor on behalf of the BAA, was likely to receive compensation in excess of fifteen percent of the total moneys raised.[2] IMI challenged the decision of the hearing examiner on two bases. First, it argued that G. L. c. 68, § 21, is an unconstitutional infringement on the free speech rights of the charities which are subject to the statute. Second, it claimed that the hearing examiner mischaracterized the contract between IMI and the BAA as one for solicitation of charitable contributions when in fact the transactions between the BAA and sponsors solicited by IMI were commercial in nature.

A judge of the Superior Court dismissed IMI's appeal of the administrative decision on the ground that a concurrent decision declaring the contract between IMI and the BAA void ab initio rendered it moot.[3] We agree with the judge and affirm the judgment of dismissal.

A complete description of the events leading up to the making of the contract between IMI and the BAA and the subsequent falling out can be found in *Boston Athletic Ass'n* v. *International Marathons, Inc., ante* 356 (1984), decided this day. For the purposes of the present discussion, an abbreviated history will suffice. On September 23, 1981, IMI (through its president) and the BAA (through its president) entered into a contract whereby IMI would solicit sponsors for the BAA in order that it might fund the annual Boston Marathon (Marathon). The

---

[2] General Laws c. 68, § 21 (*a*), as amended through St. 1981, c. 345, § 2, provides in pertinent part: "No charitable organization . . . shall agree to pay a professional solicitor or its agents, servants or employees, including agents, servants or employees assigned to work under the direction of a professional solicitor, in the aggregate a total amount in excess of fifteen per cent of the total moneys, pledges or other property raised or received by reason of any solicitation activities or campaigns, including reimbursement for expenses incurred."

[3] That decision is affirmed this day in *Boston Athletic Ass'n* v. *International Marathons, Inc., ante* 356 (1984).

BAA is a nonprofit corporation, incorporated by St. 1887, c. 287. The original purposes of the organization were to maintain a clubhouse and reading room for "social purposes and for the encouragement of athletic exercises." Its amended by-laws describe its purpose as the general encouragement of amateur sports and physical exercise, and its main function as the presentation of the annual Marathon. The contract provided that if less than $400,000 were raised, IMI would receive fifteen percent of the total. If more than $400,000 were raised, IMI's compensation would be all moneys in excess of that amount. The members of the board of governors of the BAA (other than the president) did not learn of the contract with IMI until February, 1982. On September 9, 1982, the director of the division determined that IMI's compensation was likely to exceed fifteen percent of the total moneys received and disapproved the contract pursuant to G. L. c. 68, § 21.[4] The director's decision was affirmed after a hearing before the division. The determination of disapproval rendered both IMI and the BAA subject to prosecution for "performing services or receiving or making payment on such contract." G. L. c. 68, § 21, as amended through St. 1981, c. 345, § 2. IMI appealed the decision of the division to the Superior Court pursuant to G. L. c. 30A, § 14.[5] Meanwhile the BAA brought a separate action in the Superior Court seeking a declaration that the president of the BAA lacked the authority to enter into the contract with IMI and that the contract was void ab initio. That declaration was granted and is affirmed by this court. *Boston Athletic Ass'n* v. *International Marathons, Inc.*, *supra*.

We have determined that IMI is not entitled to recover under its contract with the BAA. There is no longer a contract between IMI and the BAA. We have also determined that the activities

---

[4] The director is required by the terms of G. L. c. 68, § 21 (*c*), to examine any contract between a public charity and a professional solicitor which does not provide for compensation on a percentage basis.

[5] That section provides, in pertinent part, that "[a]ny person or appointing authority aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to a judicial review thereof." G. L. c. 30A, § 14, as amended by St. 1976, c. 411, §§ 1 and 2.

of IMI were commercial in nature, rather than charitable solicitations within the meaning of the statute. *Attorney Gen.* v. *International Marathons, Inc., ante* 370, 374 (1984). Its compensation for the solicitation on behalf of the BAA will be determined on the basis of the fair value of its services. *Boston Athletic Ass'n* v. *International Marathons, Inc., supra* at 367-368. Thus, even if the implied agreement to pay IMI a reasonable fee were to result in recovery by IMI of more than fifteen per cent of the funds collected, the statute would not be violated. Therefore, the issue being moot, we decline to pass on the statute's constitutionality.[6]

This court has long adhered to the principle that it should not resolve hypothetical issues.[7] The issue is moot because the contract between IMI and the BAA has been declared void and the statute held inapplicable to IMI's solicitation of funds. Thus no violation of G. L. c. 68, § 21, can arise from the facts

---

[6] We note, however, that similar issues have arisen in other jurisdictions. In *Streich* v. *Pennsylvania Comm'n on Charitable Orgs.,* 579 F. Supp. 172 (M.D. Pa. 1984), a statute which imposed a fifteen percent ceiling on the amount a charity can pay to a professional solicitor was found constitutional. The statute in *Streich* is arguably less restrictive of First Amendment freedom than G. L. c. 68, § 21, because it permits the Pennsylvania Commission on Charitable Organizations to waive the fifteen percent limitation upon a showing of special circumstances. In *State ex rel. Olson* v. *W.R.G. Enterprises, Inc.,* 314 N.W.2d 842, 850 (N.D. 1982), the Supreme Court of North Dakota found that the fifteen percent limitation in its statutes was a "direct and substantial limitation on protected activity" which did not directly further the State's interest in preventing fraud. See *Secretary of State* v. *Joseph H. Munson Co.,* 467 U.S. 947 (1984) (No. 82-766, June 26, 1984) (statute which prohibits charities from paying expenses of more than twenty five percent of the amount raised was found to be an unconstitutional limitation on protected First Amendment solicitation activity, despite a provision that the restriction could be waived if it would effectively prevent the organization from raising contributions). See also *Optimist Club* v. *Riley,* 563 F. Supp. 847, 849 (E.D.N.C. 1982) (statute which makes it unlawful for professional solicitors to solicit charitable contributions by telephone infringes on First Amendment rights of solicitors and charities and is not the least restrictive means to prevent fraud).

[7] This reluctance is heightened when the hypothetical question involves a constitutional dimension. *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 782-784 (1984).

before us in this case.[8] The parties no longer have a concrete stake in the determination of the issue.

Courts may be willing to resolve issues of public importance which have become moot if they are "capable of repetition, yet evading review." *Karchmar* v. *Worcester,* 364 Mass. 124, 136 (1973), quoting *Southern Pac. Terminal Co.* v. *ICC,* 219 U.S. 498, 515 (1911). Although the issue presented by IMI's challenge to the constitutionality of G. L. c. 68, § 21, is certainly important and one capable of repetition, it is not one that typically will evade review by becoming moot prior to completion of the appellate process. Cf. *Guardianship of Doe,* 391 Mass. 614, 618-619 (1984) (temporary guardianship and commitment of the mentally ill); *Globe Newspaper Co.* v. *Superior Court,* 379 Mass. 846, 847-848, vacated and remanded on other grounds, 449 U.S. 894 (1980), *S.C.* 383 Mass. 838 (1981), rev'd 457 U.S. 596 (1982) (news media coverage of criminal trials). It is reasonable to expect that appellate review of this question may be obtained "in the normal course of some subsequent action without any substantial likelihood of mootness." *First Nat'l Bank* v. *Haufler,* 377 Mass. 209, 211 (1979).

The mootness doctrine applies to judicial review of administrative decisions as well as to appellate review of lower court decisions. See, for example, *Tennessee Gas Pipeline Co.* v. *FPC,* 606 F.2d 1373, 1379 (D.C. Cir. 1979) ("Judicial review of administrative action, like all exercises of the federal judicial power, is circumscribed by the requirement that there be an actual controversy. Accordingly, we have no jurisdiction over suits challenging administrative orders which are moot"). See also *Illinois Bell Tel. Co.* v. *Illinois Commerce Comm'n,* 67 Ill. App. 3d 616 (1979) (court

---

[8] Since the requirements and penalties of G. L. c. 68, § 21, apply equally to the charity and the solicitor, it does not matter whether IMI asserts its standing to challenge its constitutionality on its own behalf or on behalf of the charity. Since the statute has no effect on their relationship in the absence of an agreement, IMI has not suffered economic injury from interference with contractual relations nor has the BAA's right to protected First Amendment expression been impaired.

refused to review validity of administrative order which had been superseded by a subsequent order during the appellate process).

*Judgment affirmed.*